TENNANT et al. v. MATTHEWS et al.
(No. 616.)

Court of Civil Appeals of Texas. Eastland.
June 28, 1929.

Rehearing Denied Sept. 20, 1929.

Cockrell, McBride, O'Donnell & Hamilton, of Dallas, for appellants.

Blanton, Blanton & Blanton, of Abilene, for appellees.

HICKMAN, C. J. The appeal is from an interlocutory order refusing an application for a temporary injunction. The injunction prayed for by appellants was to restrain and enjoin appellees from executing or placing of record any lease for the exploration of minerals on a certain tract of land described in the application, and from doing any act which would interfere with the rights of appellants as the owners of a mineral lease on said land. One of the real purposes of the suit was to have construed the provisions of an oil and gas lease. The lease was executed on the 26th day of March, 1918, by P. W. Reynolds and wife, Rosie Reynolds, the then owners of the land, to Edward M. Stephens, lessee. Thereafter the land was conveyed by Reynolds to appellee Matthews, and the lease, in so far as it covered a part of the land, was assigned by Stephens to appellants, Tennant et al. The lease contains many provisions, but the only portions necessary to be set out herein are the general granting clause and the provisions with reference to the termination of the estate granted. These portions are as follows:

"Oil and Gas Lease.

"This agreement, entered into on the 26th day of March, 1918, between P. W. Reynolds and wife, Rosie Reynolds, party or parties of the first part, hereinafter called 'lessor,' and Edward M. Stephens, party of the second part, hereinafter called 'lessee,'

"Witnesseth: That lessor, in consideration of four hundred eighty and no/100 dollars cash bonus in hand paid by the lessee, the receipt of which is hereby acknowledged, and of the covenants and agreements hereinafter contained, has granted, demised, leased and let, and by these presents does grant, demise, lease and let, unto the said lessee, for the sole and only purpose of operating for and producing oil, gas, coal and other minerals thereon and therefrom, together with rights of way and servitudes for pipe-lines, telephone and telegraph lines, for tanks, power houses, stations and fixtures, for producing and caring for such products and housing and boarding employees, and all other rights and privileges necessary, incident to or convenient for the economical operation of said land, alone or conjointly with neighboring lands, for oil, gas, coal or other minerals, with the right to use free oil, gas or water, but not from lessor's water wells, for such purposes, and with the right of removing, either during or after the term thereof, all and any property and improvements placed or erected on the premises by lessee, including the right to pull and remove all casing; said land being situate in the county of Shackelford, state of Texas, and more particularly described as follows:
* * *

"Fourth. If operations for the drilling of

an oil or gas well are not begun on said land on or before the First day of April, 1919, this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to the lessor, or deposit to the credit of P. W. Reynolds, in the First National Bank at Albany, Texas (which shall continue as the depository regardless of changes in ownership of the land), the sum of sixty and no/100 dollars, which payment or tender may be made by the check or draft of the lessee, and, however made, shall operate to confer on the lessee the privilege of deferring the commencement of such well, for six months from said date. Thereafter, in like manner and upon like payments or tenders of said amount, the commencement of said well may be further deferred for additional periods of six months successively, provided always that this lease cannot be kept in force by such payments in the absence of drilling operations for a longer period than ten years from the date last above set forth, if within said time, oil or gas is not found in paying quantities, but if so found, this lease shall continue in full force and effect so long as oil or gas is found in paying quantities."

The lease was kept in force by the regular payment of rentals to April 1, 1929. During the eleventh year of the lease, and between April 1, 1928, and March 1, 1929, appellants drilled two wells upon the leased premises, both of which were dry holes. These wells were plugged and abandoned prior to April 1, 1929. No other drilling was done, and no drilling operations were in progress on April 1, 1929. On this latter date the appellants tendered to appellee $120 as rentals, covering the period from April 1, 1929, to April 1, 1930. Appellees refused to accept this tender claiming that by its own terms the lease had expired on April 1, 1929, and that appellants were not entitled to prolong its life by the payment of rentals.

■The only question for determination is whether, under the particular provisions of the lease contract above copied, appellants were granted the privilege of continuing the lease in effect by the payment of rentals after the expiration of 11 years from its execution, in the absence of the discovery of oil or gas. The parties agree that appellants had the right so to keep same alive 11 years, that is, until April 1, 1929, and the only issue relates to whether that right ceased on that day. Appellants' contention is that, since the lease negatived their right to keep it in force by the payment of rentals, in the absence of drilling operations, for a longer period than 11 years, the positive statement of this negative provision granted them the right to keep same alive indefinitely by the payment of rentals, if drilling operations had occurred before April 1, 1929. This construction imputes to the lessor and lessee the intention to create, by the language employed, an estate of probable longer duration in the event of a dry hole than was created in the event oil or gas was found. Such a construction being unreasonable, it should not be employed, unless, by the language used, no other construction can be adopted. That construction should never be adopted which leads to an unreasonable result, if the language employed is at all susceptible of a construction making the provision reasonable, for parties to a contract are presumed to intend the reasonable rather than the unreasonable.

■There is no necessity to enter into a discussion of the character of estate granted by the so-called lease. It seems now to be the settled law in this state that the estate created by instruments of this character is a determinable fee; that is, a fee-simple estate, subject to some special limitation. Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S. W. 290, 29 A. L. R. 566; Caruthers v. Leonard (Tex. Com. App.) 254 S. W. 779; Reynolds v. McMan Oil & Gas Co. (Tex. Com. App.) 11 S.W.(2d) 778.

The general granting clause copied above conveyed the oil and gas in place, and provision fourth prescribed the limitations upon the duration of the grant. A consideration of that provision as a whole, in connection with the express purpose of the grant, as stated in the granting clause, discloses that the parties, by the language employed, undertook to set the limits of duration of the grant under two contingencies, viz.: (1) In the event oil or gas should be found in paying quantities; and (2) in the event neither oil nor gas should be found. It is clear that, if oil or gas was found, the lease would remain in force so long as, and no longer than, one or the other was produced in paying quantities. It is also clear that, in the absence of drilling operations, the lease could not be kept in force by the payment of rentals for a longer period than 10 years from April 1, 1919.

■The question here presented is: What was the intention of the parties, in the event a dry hole was drilled within 11 years? By the terms of the provision the lease ipso facto terminated on April 1, 1919, in the absence of drilling operations or payment of rentals on or prior to that date. The only purpose to be served by the payment each 6 months of $60 was to confer upon the lessee the privilege of deferring the commencement of a well. The payment of such rental could have no other purpose. The lessee was given the option either to conduct operations or to pay semiannually for the privilege of deferring such operations. Since the only purpose of the payment was to defer the commencement of operations, then it follows that, after operations had actually commenced, the payment of rentals thereafter would serve no purpose whatever. When the lessee elected to commence operations in lieu of continued payment of rentals, he lost his right to keep

the lease in force by the payment of rentals. It is significant to note that there is absent from this lease the provision, common to leases in this territory, to the effect that, after a dry hole is drilled, the lessee can resume the payment of rentals, and in that manner prolong the life of the lease. No right to resume the payment of rentals after an unsuccessful effort to obtain production is contained in the lease. If the lessee had the right to prolong the life of the lease longer than April 1, 1929, it was by virtue of drilling a dry hole during the next preceding year, and not by virtue of tendering rentals, for by the express terms of the lease its life could not be extended longer than that date by the payment of rentals.

Appellants insist that by a combination of the two—that is, the drilling of a dry hole and the tender of rentals—the term could be extended indefinitely. As noted above, such a construction being unreasonable, it should not be adopted, unless necessitated by the language of the instrument. The provisions of the lease can be harmonized and made reasonable by construing the expression "in the absence of drilling operations," as used in the provision, as meaning in the absence of continuous drilling operations. We think such a construction is required, and that, when construed as a whole, the provision with reference to the payment of rentals and the beginning of operations is that the lessee could, at his election, defer the commencement of a well for a certain time by the payment of rentals, but, having elected to begin operations, the lease could be kept in force thereafter in only one of two ways, viz.: (1) By discovering oil or gas in paying quantities; or (2) by continuing such operations. The right to cease operations and resume payment of rentals for the privilege of deferring further operations is not conferred.

In the instant case the lessees, prior to April 1, 1929, had abandoned the last dry hole drilled upon the premises, and were conducting no character of operations on that date. They could not then fall back upon a provision for payment of rentals, and in that manner further prolong the life of the lease. That would violate the purpose for which the rentals were to be paid.

Appellants rely upon the case of Bouldin v. Gulf Production Co. (Tex. Civ. App.) 5 S.W.(2d) 1019. In that case the lessee did not rely upon the fact that within the term dry holes had been drilled, but upon the fact that at the date of the expiration of the term it was actually drilling, and on said date discovered oil. There had been drilled some dry holes on the leased premises in that case, but the opinion does not hold that the term of the lease could be extended on account of the drilling of such dry holes. The question decided in that case and the one here decided are not at all the same.

The trial court did not err in refusing the temporary injunction, and its judgment is accordingly affirmed.