28 P.(2d) 885

**SCHRADER et al. v. GYPSY OIL CO. et al.**

**No. 3831.**

Supreme Court of New Mexico.

Nov. 20, 1933.

Rehearing Denied Feb. 1, 1934.

Russell G. Lowe, of Tulsa, Okl., J. D. Atwood, of Roswell, George A. Hill, Jr., and Williams, Lee, Hill, Sears & Kennerly, all of Houston, Tex., Merritt C. Mechem and Waldo H. Rogers, both of Albuquerque, Conrad E. Cooper, of Tulsa, Okl., and O. O. Askren, H. C. Buchly, and Grace McDonald Phillips, all of Roswell, for appellants.

Hervey, Dow, Hill & Hinkle, of Roswell, J. D. Lydick, of Oklahoma City, Okl., and George L. Reese, Jr., of Lovington, for appellees.

WATSON, Chief Justice.

William D. Grimes and wife owned lands described as S.W.¼, Sec. 21; W.½, Sec. 32; N.½ N.E.¼, S.E.¼ N.E.¼, and N.E.¼ S.E.¼, Sec. 33; all in Tp. 18 S., R. 38 E., containing 640 acres. So owning these three noncontiguous tracts, he included them in a single "oil and gas mining lease" to Gypsy Oil Company. A one-eighth oil royalty was reserved, deliverable in kind or payable in cash, at the lessee's option.

Thereafter he made numerous conveyances of the mineral content of the lands, by virtue of which, either directly or through mesne conveyances, the ownership of mineral rights in each of these tracts became vested in numerous individuals as tenants in common.

To plaintiff he conveyed an undivided one-fourth interest in all the oil, gas, and other mineral and mineral substances in and to and that might be produced from the W.½ of Sec. 32 above described. By other deeds he further subdivided the mineral rights in that tract, and by still others so subdivided the mineral rights in each of the other tracts.

Plaintiff's deed contains this provision:

"Said land being now under an oil and gas lease executed in favor of Gypsy Oil Company, it is understood and agreed that this sale is made subject to the terms of said lease, but covers and includes one-fourth of all the oil royalty and gas rental or royalty due and to be paid under the terms of said lease (as to said lands above described only)."

Except for the variance in the fraction of mineral right and royalty transferred, and as to one deed to be noticed later, this provision occurs in each of the mineral deeds.

The lessee first explored the tract in section 32 and there made important discovery resulting in large production of oil. It thereupon circulated its so-called division order, in which it announced that the accruing royalty was apportionable to each mineral right owner according to the ratio of the acres owned to the aggregate 640 acres constituting the leased premises.

Plaintiff thereupon brought this suit against the lessee and against all other owners of mineral rights, to establish his contention that his share of the royalty was one-fourth of the one-eighth of oil produced from the 320-acre tract in section 32, on which the oil was produced, not one-eighth of the one-eighth of oil produced from the 640 acres constituting the leased premises. He prayed that the lessee be required to apportion the royalty accordingly.

Those defendants situated as plaintiff was, owning undivided interests in the mineral rights in section 32, by answer and cross-complaint, made common cause with him. The lessors, Grimes and wife, did likewise.

The defendants owning mineral rights in sections 33 and 21, by their pleadings, aligned themselves against plaintiff's contention, contending that the division order correctly interpreted their royalty rights. The lessee did the same.

To state it simply: The royalty here involved is from oil produced upon wells on the tract in section 32. The mineral owners of that tract claim it all. The owners of the tracts in sections 21 and 33 claim proportionate parts of it, and the lessee supports their claim.

Thus viewing the controversy, there would seem to be force in the contention of plaintiff and his allies that the lessee has no substantial interest in the litigation, being a mere stakeholder. However, the lease necessarily comes into question, since every owner is sent to it to ascertain the amount at least of his royalty interest. The lessee, disclaiming partisanship in the matter of royalty distribution merely, claims a legitimate interest in maintaining the integrity of its lease; anticipating consequences disadvantageous to it if the lease should be interpreted as plaintiff insists it should be.

The portion of the lease here involved is section 10. It reads as follows:

"If the leased premises shall hereafter be owned in severalty or in separate tracts, the premises, nevertheless, shall be developed and operated as one lease and all royalties accruing hereunder shall be treated as an entirety and shall be divided among and paid to such

separate owners in the proportion that the acreage owned by each such separate owner bears to the entire leased acreage. There shall be no obligation on the part of the lessee to offset wells on separate tracts into which the land covered by this lease may be hereafter divided by sale, devise, or otherwise, or to furnish separate measuring or receiving tanks. It is hereby agreed that, in the event this lease shall be assigned as to a part or as to parts of the above described lands, and the holder or owner of any such part or parts shall fail or make default in the payment of the proportionate part of the rent due from him or them, such default shall not operate to defeat or affect this lease in so far as it covers a part or parts of said land upon which the said lessee or any assignee hereof shall make due payment of said rentals. If at any time there be as many as four parties entitled to rentals or royalties, lessee may withhold payments thereof unless and until all parties designate, in writing, in a recordable instrument to be filed with the lessee, a common agent to receive all payments due hereunder, and to execute division and transfer orders on behalf of said parties, and their respective successors in title."

While the learned trial judge found numerous facts additional to those stated, most of them need not be here detailed. Sufficient to say that he found that no substantial inconvenience or expense would be caused the lessee if it were required to apportion the royalty according to plaintiff's contention.

Upon the facts found and upon conclusions stated, plaintiff and those in alliance with him were adjudged owners of all the royalty upon oil produced from section 32, and the lessee was required to make payment accordingly. The numerous owners of mineral rights in the other two tracts, and the lessee as well, have appealed.

The conclusions of law here deemed important are:

"I. The provisions of section 10 herein quoted are not applicable to the conditions existing under this Lease, and the contingencies provided for in said paragraph 10 for its operation have not arisen in that the premises described in said lease have not been since the making of said lease owned in severalty or in separate tracts or divided by sale, devise or otherwise into separate tracts but the ownership of each tract is separate and distinct from the ownership of either of the remaining tracts, and the ownership in each of said tracts is by undivided interests therein.

"II. That the provisions of Section 10 of said lease if applied to the situation as it exists in this case of three separate noncontiguous tracts of land, none of which have become subsequently owned in severalty would violate the public policy of the State of New Mexico.

"IX. That the court finds it unnecessary to construe the meaning of the language in the mineral deeds in evidence, as set forth in quotation therefrom in Paragraph VIII of the findings of fact herein, or to determine to what extent the words embraced in the latter paragraph of said quotation would qualify or restrict the meaning of the words in the first part thereof, because under the plain language of said deeds as set forth in

said quotation, the grantee would take the conveyance subject to the terms of the lease, but this could refer only to such terms as are legally applicable to the leased premises, as described in the lease, and the court has heretofore determined that the provisions of Section 10, as set forth in Paragraph III of the findings of fact, are not applicable at the present time to this lease and do not control the payment and distribution of moneys arising from the royalty obtained from production on the separate tracts embraced in said lease."

We are at once struck with a peculiarity in conclusion IX. Though all of these rival claimants of royalty have title from a common source and of uniform character, the court found it unnecessary to construe the language of their deeds. This, because section 10 of the lease had not become applicable and does not control the payment and distribution of royalty. This we do not understand. If the lease does not control, it would seem that the deeds must. It strikes us that the first inquiry must be as to the meaning of the deeds.

In the printed brief of the appellees, this matter is treated somewhat summarily. It is the constant assumption and the basis of the argument that the lessor, the owner in fee, has apportioned his royalty in one manner, only to find, after the event, a lease provision relied upon to prevent such apportionment.

If it be true that Grimes has assumed to sell to the other appellees, and they have purchased, as a royalty, one-eighth of the oil to be produced in section 32, it is most unfortunate for them to run upon a provision in the lease reducing their actual acquirement by one-half. And, the transaction with the other claimants being the same with respect to the tracts in which they have acquired mineral rights, equity would not willingly aid them to something not purchased by a strict construction of section 10.

If the assumption were correct, even if we could not sustain, we should give willing ear to counsel's able and forceful defense of conclusions I and II. But if this be mere unwarranted assumption, the more engaging arguments of appellees, as to the proper construction of section 10, lose their force.

Moreover, if the assumption be unwarranted, conclusion II seems to become pointless. No question of public policy is involved if Grimes and his grantees have acquiesced in and acted upon a provision in the lease, even though that provision, under direct attack by the former as lessor, might have been deemed an unreasonable restraint upon his power of alienation.

So we come to the point urged by some of the appellants, and necessarily inuring to the benefit of all, that:

"The trial court erred in refusing to hold that the mineral deeds involved, when considered with the provisions of the lease involved, are plain and unambiguous and provide that all the royalties accruing under said lease shall be treated as an entirety, and shall be divided among and paid to the separate owners in the proportion that the acreage owned by each separate owner bears to the entire leased acreage."

The deed to plaintiff, taken as an example, conveys an undivided one-fourth interest in the mineral content of one of the three tracts constituting the "leased premises" or the "entire leased acreage." In so far as this deed conveys the reversion, after the lease shall have lapsed, it affects no lands except those described, the W.½ of Sec. 32.

But the royalty is a separate matter. After reciting that the land is under lease and specifying that "this sale" is subject to its terms, the deed provides:

"* * * This sale * * * covers and includes ¼ of all of the oil royalty * * * due and to be paid under the terms of said lease (as to said lands above described only)."

Thus the lease provision as to royalty is essential to give meaning to the deed provision. The former is necessarily embodied in the latter.

The parenthetical "as to said lands above described only" is important. Without it the deed would transfer one-fourth of the royalties accruing under the lease. No one contends that such was the intent. It serves to link the royalty right in some manner to the mineral right or reservation. It seems surely to contemplate that ownership of the "lands above described" carries with it certain royalty rights, determinable from the lease, and that the grantee is to participate therein, ratably with his acquired undivided interest in those lands.

The parenthetical phrase compels the inference that the W.½ of Sec. 32 is but a part of the leased premises. There is no suggestion as to the total extent of the leased acreage, whether it comprises a single or several noncontiguous tracts, or whether the fee and mineral content were in a single ownership. For these matters, as well as for other essentials, the lease must be consulted.

Appellees inquire whether anything could be plainer than "that the royalty interest and rentals which the grantee is to get under the deed are restricted to those arising on the particular tract of land described in the deed." Counsel's present language even is equivocal. Royalty might *arise on* section 32, either in the sense that the oil was produced on that land, or in the sense that it was apportionable to it by contract. Counsel of course use the term "arising on" in the former sense. So we answer in the affirmative. It would have been much plainer and more direct and natural to have expressed that idea thus:

"One-quarter of all the royalty to accrue under said lease from oil produced upon the above described land."

Such plain and direct expression seems carefully to have been avoided. On the contrary, the language is persuasive of the thought that the W.½ of Sec. 32 will be found to be a unit of the leased premises, and that its owner or owners will be found entitled under the terms of the lease to participate in a single royalty accruing under the lease.

So we approach section 10, not as a covenant or stipulation between the lessor and lessee which may unfortunately defeat the intent of the grantor and his grantees, but as a complement of the royalty provision

of the deed; a stipulation of the deed embodied by reference.

We find:

"If the leased premises shall hereafter be owned in severalty or in separate tracts, the premises, nevertheless, shall be devoloped and operated as one lease and all royalties accruing hereunder shall be treated as an entirety and shall be divided among and paid to such royalty owners in the proportion that the acreage owned by each such separate owner bears to the entire leased acreage."

Considering this a provision of the deed rather than of the lease, and considering the controversy as between rival claimants under the deeds rather than as between parties to the lease, we have no doubt as to its meaning. An extended analysis would scarcely make it plainer.

It may be that this form of expression was originally drafted for use in leasing a single tract; that it contemplates the future contingency of a divided ownership of that single tract; that, in this case of noncontiguous tracts, the transfers have brought about no more of an ownership "in severalty or in separate tracts" than already existed; that all substantial interests of the lessee are expressed in and protected by the provision following as to offset wells and tankage; that the lessor's power of alienation is somewhat restricted, even so unreasonably and unnecessarily as to raise a doubt of the validity of the stipulation, considered as a provision of the lease.

If in fact the deeds had plainly conveyed a specified fractional interest in the royalty from oil produced upon the described tract, we might be called upon to consult the canons of construction invoked by appellees; "that full force and effect be given to all words used in the sentence; that there be served the purpose intended by the parties thereto; that the contract do no injustice but be such as a sane and sensible lessor might be reasonably expected to naturally execute; that the covenant be construed so as to make it legal and not invalid; that the contract be given that meaning which clearly appears from its associated sentence immediately following, observing the rule that the same must be most strongly construed against the party who prepared it and against the party appearing therein as lessee." In that case, as we have said, we should feel called upon seriously to consider the contention that the first sentence of section 10 should be made by construction to read as follows:

"If" (any one of) "the leased premises shall hereafter be owned in severalty or in separate tracts the" (same) "nevertheless, shall be developed and operated as one lease and all royalties accruing hereunder shall be treated as an entirety and shall be divided among and paid to such separate owners in the proportion that the acreage owned by each such separate owners bears to the entire leased acreage" (therein).

But, considering the strained construction of the deeds to which appellees must resort, and considering the first sentence of section 10 merely as completing the royalty provision of the deed, and that the reasonably plain language of section 10 is entirely consistent with the preferable meaning of the deed, we

feel constrained to reject appellees' contention.

We have, we believe, a complete and effective provision or scheme for unit development and production on a small scale. In it the lessor seems to have acquiesced and into it his grantees seem to have injected themselves. It might perhaps have been more nicely and exactly expressed, in view of the noncontiguity of the three tracts and their single ownership. But we do not think it could have been misunderstood. Reading deeds and lease together, we think the meaning is as contended by appellants and that the interpretation urged by appellees is inadmissible.

The exceptional deed above mentioned is that of appellant Benson. By it Grimes conveyed to him an undivided one-sixteenth interest in minerals in described tracts in five different sections, two of the tracts being those here involved in sections 21 and 33. The royalty provision varies in two respects from that in the other deeds. First it recites that the land is "now under an oil and gas lease executed in favor of various lessees as shown by the county records," where the other deeds recite a single lease to the Gypsy Oil Company. Second, it contains the following additional language:

"Provided, however, if any of said lands are included in leases that cover lands other than the lands herein described; and said lease or leases are operated as a single lease and the rentals and royalties treated as an entirety, the grantee herein shall share in said rentals and royalties in the proportion that the royalty acres owned by him in the lease bears to the entire leased acreage."

In view of our main conclusion, we do not understand that these further provisions require any separate consideration, or that appellant Benson's rights differ from those of other grantees.

The judgment will be reversed and the cause remanded with a direction to enter judgment conformably hereto, or for such further proceedings, if any, as may be proposed and entertained consistently herewith.

It is so ordered.

SADLER, HUDSPETH, BICKLEY, and ZINN, JJ., concur.