Dula Dashiell COCKRELL et al.,
Petitioners,

v.

TEXAS GULF SULPHUR COMPANY,
Respondent.

No. A–5554.

Supreme Court of Texas.

Dec. 12, 1956.

Concurring Opinion March 20, 1957.

Rehearing Denied March 20, 1957.

Liberty County, Texas. On that date she, joined by her husband, executed an oil, gas and mineral lease on the whole of this land. Erwin W. Smith was the lessee in said lease. Later the south one-half of the 729.7 acres was released from Smith's mineral lease. Afterwards and on April 12, 1926, Ruth Sergent, joined by her husband, executed an oil and gas mineral lease to A. R. Miller covering this south one-half of the tract of land. These two leases were in all things of the same wording, and for the purposes of this case, we can proceed as if there were only one lease on the entire tract of 729.7 acres. Where there are varying interests in each tract we will set them out at appropriate places in our opinion. The leases provided for royalty payments on sulphur of 50 cents per long ton. Sulphur is the only mineral with which we are concerned. Subsequent to the execution of the leases, but prior to September 28, 1931, Mrs. Sergent had sold and conveyed portions of her minerals and royalties until on the above date she owned, subject to the outstanding leases, ⅛th of the mineral fee interest under the west 400 acres of the 729.7 acres and one-half of the mineral fee interest on the east 329.7 acres of the tract. Each of the leases contained the following provisions:

"It is further agreed that all the conditions and terms herein shall extend to the heirs, executors, legal representatives, successors in interest and assigns of the parties hereto; but no change of ownership of the land, or part thereof, shall impose any additional obligations or burden on the Lessee, and to that end Lessors hereby covenant for themselves, their heirs, assigns and successors in interest, *that in case of any change of ownership of said land,* or part thereof, whether by conveyance, will, inheritance, partition or otherwise, all rentals and *royalties accruing hereunder shall be paid to the new owners in proportion to their ownership of the whole of the land hereby leased* so that no owner of a segregated part of said

Fulbright, Crooker, Freeman, Bates & Jaworski, John M. Jamison, Houston, for petitioners.

H. F. Montgomery, H. W. Strickland, Williams, Lee & Kennerly, Houston, for respondent.

GRIFFIN, Justice.

This is a suit by petitioner for an accounting and recovery of royalties payable out of sulphur produced by respondent. The petitioners were plaintiffs in the trial court, and the respondent was the defendant. On July 27, 1925, Mrs. Ruth Sergent owned in fee simple 729.7 acres of land in

land shall be entitled to the whole royalties accruing from developments on said segregated tract, but only to such part of such royalty as the acreage in his tract is to the whole acreage embraced in this lease; *this covenant shall be taken and construed as a covenant running with the land and binding on all successors in interests to Lessors herein."*

On September 28, 1931, and both leases being in full force and effect, and owned by others than Gulf Production Company, Mrs. Ruth Sergent and husband conveyed to Gulf Production Company the 729.7 acres of land by warranty deed. The pertinent portions of the deed are as follows: that Ruth W. Sergent and husband, called grantor, for a consideration of Ten Dollars and other good and valuable considerations paid by Gulf Production Company "and subject to the mineral and/or royalty reservations and exceptions hereinafter set out" has granted, sold and conveyed, etc. to Gulf Production Company the 729.7 acres of land in Liberty County, Texas, describing same by metes and bounds. Immediately following the description and before the habendum clause we find the following, "Subject, however, to the terms and conditions of each and all of the existing oil, gas and mineral leases and mineral and/or royalty conveyances, and grantor hereby expressly reserves and excepts unto herself, her heirs, executors, administrators and assigns" seven numbered reservations covering oil, gas and sulphur royalties. Those dealing with sulphur are numbers 5 and 6 and are as follows:

"5. 6½ cents per ton 2240 pounds on all sulphur produced and marketed from the West 400 acres of said above described premises."

"6. 25 cents per ton of 2240 pounds on all sulphur produced and marketed from the East 329.7 acres of said above described permises."

It was further provided:

"It is expressly understood and agreed that the reservations and exceptions hereinabove enumerated shall be perpetual and shall apply whether such oil, gas, cas*h*inghead gas and/or gasoline, sulphur and/or other mineral or minerals is produced under the existing or any future lease or leases by the lessee or lessees therein or by the grantee herein, its successors and assigns, or otherwise."

Following the habendum clause, and at the beginning of the warranty clause, we find the following: "* * * and subject to the aforesaid oil, gas and mineral leases and mineral and/or royalty conveyances, grantor does hereby bind herself, her heirs, etc."

Plaintiffs hold all the rights of Mrs. Sergent under this deed by proper conveyance from her. Gulf Production Company sold and transferred all of its rights in this land to Texas Gulf Sulphur Company in December, 1931. Sulphur has been produced from the west 400 acres, but the east 329.7 acres has been nonproductive. Defendant has paid to plaintiffs a royalty of 6½ cents per long ton on the sulphur production under their construction of reservation 5 set out above. Plaintiffs claim that the entirety clause contained in the lease entitles them to a royalty of 14.72180347 cents per ton on the sulphur produced on the west 400 acres. This suit was by plaintiffs against the defendant to collect the difference between the 6½ cents paid, and the 14 plus cents claimed as due them by virtue of the entirety clause in the leases.

■ The entirety clause is recognized as a binding, enforceable and valid provision in a lease, and this court so held in the case of Thomas Gilcrease Foundation v. Stanolind Oil & Gas Co., 153 Tex. 197, 266 S.W. 2d 850.

The case of Gypsy Oil Co. v. Schonwald, 107 Okl. 253, 231 P. 864, was cited by this Court in the Gilcrease case. The Oklahoma court in discussing the validity and binding

effect of an entirety clause in an oil and gas lease says that the lessor has a right to place in his lease any provision which he deems to his or a subsequent purchaser's advantage. 32 Tex.Law Rev. 660; 671 et seq.

Defendants do not attack the validity of the entirety provision. They contend that the reservations and exceptions in Mrs. Sergent's deed to Gulf Production Company are unambiguous, clear and certain, and that as to the west 400 acres such reservation specifically provides for a royalty of 6½ cents per long ton, and that this royalty has been paid, and that the deed does not contain any entirety clause providing for a payment of royalty on an apportionment basis. Therefore, it is contended the entirety clause in the lease does not govern the rights of the parties to the deed and this suit. On the other hand, plaintiffs claim that the wording of the deed wherein it is provided "subject, however, to the terms and conditions of each and all existing oil, gas and mineral leases and mineral and/or royalty conveyances" expressly recognizes and brings forward into the deed, the entirety clause providing for apportionment of the royalty in accordance with the fractional mineral ownership in the whole 729.7 acre tract.

■ We take it that no authority need be cited for the proposition that a deed can pass no greater estate than that owned by the grantor. Likewise it is fundamental that a warranty deed will pass all of the estate owned by the grantor at the time of the conveyance unless there are reservations or exceptions which reduce the estate conveyed. Harris v. Currie, 142 Tex. 93, 176 S.W.2d 302; Alfrey v. Ellington, Tex. Civ.App., 1955, 285 S.W.2d 383, n.r.e. Also that the property excepted, or the estate reserved is never included in the grant. Benge v. Scharbauer, 152 Tex. 447, 259 S.W.2d 166; King v. First National Bank of Wichita Falls, 144 Tex. 583, 192 S.W.2d 260(1), 163 A.L.R. 1128.

■ What royalty interest in sulphur did Mrs. Sergent own on September 28, 1931, when she executed her deed to Gulf Production Company? She was bound by the entirety clause in her leases to the apportionment of her royalty with those to whom she had theretofore sold and conveyed mineral interests in the 729.7 acres. Out of the west 400 acres she had conveyed ⅞ths mineral interest, leaving her only the owner of an undivided ⅛th interest therein. The royalty of 50 cents per long ton on production had been reduced as to her ⅛th ownership to that proportionate part of her ⅛th ownership in the west 400 acres as it bore to the total acreage of 729.7 acres. In other words, by virtue of her ownership of royalty under the west 400 acres, and by virtue of the entirety clauses in the leases, she owned a royalty from the production on the west 400 acres of $400/729.7 \times \frac{1}{8} \times 50$ cents. This figures out to be a royalty per ton from production of sulphur anywhere on the 729.7 acres of 3.42606551 cents. Under the entirety clause, and by virtue of her ownership of royalty under the 329.7 acres, she was entitled to additional royalty from any production on the 729.7 acre tract. She had conveyed one-half of her minerals on the 329.7 acre tract, thus leaving her owning only one-half of the minerals. The minerals being leased, she was entitled to receive a royalty proportionate to her ownership in the east 329.7 acres as a part of the total 729.7 acre tract. That is, her royalty interest at that time was $329.7/729.7 \times \frac{1}{2} \times 50¢$. This figures out to be a royalty of 11.29573796 cents from production anywhere on the 729.7 acre tract. Add these two figures together (3.42606551 plus 11.29573796) and you arrive at 14.72180347 as the total royalty per ton of sulphur produced from any part of the 729.7 acre tract. Therefore, she did not own, after applying the apportioning provision, a 25 cents per ton royalty interest in the east 329.7 acres which she could carve out of her ownership. Neither did she own a royalty of 6½¢ per ton in the west 400

acres. It is clear that Mrs. Sergent and her grantee could not make a contract for royalty payments which would affect the rights of previous purchasers from Mrs. Sergent, not parties to such contract.

■ What was the effect of the provision in the deed that it was made subject to the terms and conditions "of each and all of the existing leases and conveyances"? As said in the case of Kokernot v. Caldwell, Tex.Civ.App., 231 S.W.2d 528, 531, wr. ref.:

> "The term 'subject to' as used in the mineral deed has a well recognized meaning. 'The words "subject to," used in their ordinary sense, mean "subordinate to," "subservient to" or "limited by." There is nothing in the use of the words "subject to," in their ordinary use, which would even hint at the creation of affirmative rights.' Englestein v. Mintz, 345 Ill. 48, 177 N.E. 746, 752. Shell Oil Co. v. Manley Oil Corporation, 7 Cir., 124 F.2d 714."

The inclusion of the "subject to" clause in the deed incorporated in the deed the leases on the 729.7 acres and defined the estate conveyed, and the nature, extent and character of such estate. Greene v. White, 137 Tex. 361, 153 S.W.2d 575, 136 A.L.R. 626. This clause was in the chain of title received by Gulf Production Company from Mrs. Sergent, and Gulf Production Company and its successors in title cannot disregard these provisions. Adams v. Duncan, 147 Tex. 332, 215 S.W.2d 599(4, 9, 10) and authorities therein cited. The parties to the deed are bound by the terms of their contract and cannot repudiate them.

Defendant contends that the only purpose of the "subject to" clauses in Mrs. Sergent's deed was to protect her on her warranty. It might well be argued that such was the purpose of the last "subject to" clause in the deed which appeared between the habendum and the warranty clauses of the deed. However, we find two other "subject to" clauses. The first one makes the deed "subject to" the min-

eral and/or royalty reservations and exceptions hereinafter set out. The second like clause comes between the description found in the granting clause and the habendum clause. This clause makes the deed "subject to" the terms and conditions of each and *all of the existing* oil, gas and mineral leases and mineral and/or royalty conveyances, and grantor expressly reserves and excepts unto herself, her heirs, etc. the seven reservations set out in the deed. The wording of the "subject to" clause shows that it deals with two different subjects, (1) existing oil, gas and mineral leases, etc. and (2) grantor's reservations in that deed which she was presently executing. This shows that these "subject to" clauses were made not only as protection against her warranty, but also to incorporate *the existing* oil, gas and mineral leases, etc. into her deed to defendant. Giving the deed the construction we give to it harmonizes all of its parts and does not set aside the effect of any language used in the deed. The entirety clauses in the leases are applied to the reservations made in her deed, but do not set aside such reservations. It was stipulated by all parties that the leases were in full force and effect on September 28, 1931, the date of Mrs. Sergent's deed to Gulf Production Company, who is the immediate predecessor in title to defendant Texas Gulf Sulphur Company.

■ In construing deeds all parts of the deed must be given effect if possible to do so without violating any legal principles. Even though different parts of the deed may appear to be contradictory and inconsistent with each other the courts must construe the deed so as to give effect to all parts thereof and will harmonize all provisions therein and not strike down any part of a deed unless there is an irreconcilable conflict. Benge v. Scharbauer, supra; Woods v. Sims, 154 Tex. 59, 273 S.W.2d 617(2-4).

■ Since a "subject to" clause is a limiting clause, and a qualifying term, Ko-

kernot v. Caldwell, supra, the entirety clause of the leases and conveyances referred to Mrs. Sergent's deed to Gulf Production Company. To hold with the defendants is to hold that a repugnancy exists between the entirety clause in the leases and the reservations in the deed, which results in setting aside the entirety clause. It also is to hold that Mrs. Sergent reserved in her deed more royalty than she owned at the time of the conveyance. To hold that the entirety clause limited and qualified the sulphur royalty reserved will give effect to all parts of the deed, and will not be a holding that Mrs. Sergent attempted to reserve more royalty than she owned. There is no contention on the part of any party to this suit that the reservations in the deed were effective to take from her grantee sufficient sulphur royalty, which added to that which she owned, would equal the reservations set out in 5 and 6 of the deed. This case was not tried below on such theory and we are not passing on that question in this case.

We agree with the Court of Civil Appeals that the rights of all parties must be determined as of September 28, 1931 when the deed was executed and delivered.

Defendant claims that the leases in existence on September 28, 1931 have lapsed and therefore the entirety clause likewise became inoperative. Defendant cannot maintain such position in view of the many instruments introduced in the record which show defendant has recognized the validity of the leases, and has bound itself not to permit the leases to lapse. Defendant has also asserted in other litigation that the leases were valid. Adams v. Duncan, supra, Grissom v. Anderson, 125 Tex. 26, 79 S.W.2d 619; Reserve Petroleum Co. v. Hodge, 147 Tex. 115, 213 S.W.2d 456, 7 A.L.R.2d 288; Loeffler v. King, 149 Tex. 626, 236 S.W.2d 772. All parties have at all times prior to this litigation proceeded on the premise that the two leases were in full force and effect. Royalties to all other owners, except Mrs.

Sergent have been paid in accordance with the entirety clauses found in both the Smith and the Miller leases. The instruments whereby defendant became the owner of the leasehold estates in the sulphur production were all from the assignees of the Smith or the Miller leases. In many of these instruments the defendant expressly bound itself to keep alive the original leases and not permit them to become forfeited. Such provisions were to the effect that Texas Gulf bound and obligated itself to take such steps as may be necessary and at its expense to extend the Sergent lease until a definite future date. The defendant paid out more that $1,850,-000 as deferment payments to those owning mineral reservations or overriding royalty interests by virtue of the Sergent leases, and for the purpose of keeping said leases in force. In the case of the assignment of the sulphur leasehold estate received by defendant from Humble Oil & Refining Company, the defendant agreed that it would not permit the Sergent lease to lapse; and further agreed that if defendant decided to give up operations under that lease, it would reassign to Humble all rights it had received from Humble, and, in addition, it would maintain the lease in full force and effect for at least ninety days subsequent to such reassignment.

Defendant further claims that, after the September 28, 1931 deed, it having become the owner of the leasehold as to sulphur production under the 729.7 acres deeded by Mrs. Sergent, there has been a merger of title in defendant, and the leases are no longer effective. On the contrary, the rights of those owning mineral interests in the sulphur—except those of plaintiffs—have been at all times recognized and payments made to such owners in accordance with the terms of the lease. We hold there has been no merger of title so as to set aside the entirety clauses in the leases. Humphreys-Mexia Co. v. Gammon, 113 Tex. 247, 254 S.W. 296, 29 A.L.R. 607; West v. Seigler, Tex.Civ.App., 265 S.W.2d

618, wr.ref., n.r.e.; 19 Am.Jur. 590, Sec. 36; Ferguson v. Ragland, Tex.Civ.App., 1922, 243 S.W. 721, wr.ref. Defendant does not own the entire title as there are interests outstanding in others. West v. Seigler, supra, is relied upon by defendant to sustain its position that there has been a merger of titles in it. That case specifically recognized that the obligation to carry out the terms of the purchase agreement rested upon the defendant in that case even if there were a merger of titles.

We hold that the entirety clauses in the leases are effective so as to require the royalty reservations in the deed to be applied on the apportionment basis. When so applied, the plaintiffs were entitled to receive as royalty on the sulphur produced from any part of the 729.7 acre tract the sum of 14.72180347 cents per long ton.

Judgments of both courts below are reversed and judgment is here rendered that plaintiffs shall recover from defendant the difference in amount paid and the amount to which they are entitled under our holding herein.

SMITH and CULVER, JJ., dissenting.

GARWOOD, J., not sitting.

SMITH, Justice.

I respectfully dissent.

It might be well to state here certain facts which will be helpful in arriving at a clearer understanding of the contention of the parties:

"In 1925 and 1926, Mrs. Ruth Sergent executed two 'unless' mineral leases, one to Mr. Erwin W. Smith, the other to Mr. A. R. Miller. Each provided for assignments, in whole or in part, and contained identical apportionment royalty provisions that each subsequent new land owner would be paid royalty in proportion to his ownership of the whole tract. The primary terms of these leases expired in 1931, but production kept them alive until production ceased in June, 1933. From that date until January, 1947, 13½ years, no oil, gas, sulphur or other mineral was produced.

"Prior to September 28, 1931, Mrs. Sergent had conveyed all of her mineral interest except ⅛ undivided fee interest in the west 400 acres and ½ undivided fee interest in the east 329 acres.

"On September 28, 1931, Mrs. Sergent conveyed to Gulf Production Company her fee title to the entire 729 acre tract (1) 'subject to' the reservations and exceptions set out in the deed and (2) 'subject to' existing mineral leases and conveyances. In December, 1931, Gulf Production Company assigned to respondent all of the properties so conveyed to it by Mrs. Sergent. Thereafter (and before January 1934) with it owning this Sergent fee interest in the land and minerals, respondent acquired from Mrs. Sergent's lessees all of the sulphur leases covering said interest. So, before January 1, 1934, respondent owned in severalty all of Mrs. Sergent's remaining fee title in land and mineral interest and all of the sulphur leasehold estates covering such interest."

The record in this case and a large portion of the briefs of all parties devote a great deal of space to the question of whether the Smith and Miller leases (mentioned in the majority opinion) had lapsed prior to the sulphur production here in controversy. I agree with the contention of respondent that the special limitations upon which the determinable fee estates created by such leases were granted has heretofore occurred, and that the production of sulphur is not subject to any of the provisions of such leases, including, of course, the apportionment provision. The majority bases its holding, as I understand the opinion, almost entirely on the

theory that the apportionment provision contained in the leases controls and determines the rights of the parties to the deed from Mrs. Sergent to Gulf, and, therefore the rights of the parties to this suit. The majority opinion gives effect to the entirety clauses contained in the leases and in effect, holds that the entirety clauses in the leases are still effective, alive and enforceable, and thereby destroy the contract between the parties as reflected in the deed from Mrs. Sergent to Gulf Production Company.

The petitioners as plaintiffs in the trial court introduced their written demand before filing suit. This demand, after setting out the entirety clause contained in the leases, contains the following statement:

"In view of the above quoted provision of the leases and in view of the conveyances out of Mrs. Sergent The Second National Bank of Houston, Trustee under the Will of E. Cockrell, deceased, and Mrs. Dula Dashiell Cockrell are entitled to receive $.147218125 per long ton on all sulphur produced, saved and marketed from the 729.7 acre tract above mentioned under said two leases. Demand is herewith made on behalf of the Trustee and Mrs. Cockrell for an accounting of the production from said tract to date and for payment of royalties due on the basis aforesaid."

Petitioners urge here in this Court that Mrs. Sergent's reservations, contrary to their own wording, bring forward and effectively insert into the deed every provision of the leases so as to expunge the reservations themselves as well as the reservation provision in the granting clause.

The deed from Mrs. Sergent to Gulf contains plainly written unambiguous reservations which cannot be destroyed by implication, neither can they be destroyed and incorporate in lieu thereof previous leases and deeds the terms of which are out of harmony with the deed.

As pointed out above, respondent before January 1, 1934 owned in severalty all of Mrs. Sergent's remaining fee title in land and mineral interest and all of the sulphur leasehold estate covering such interest. Petitioners contend that, nevertheless, respondent agreed with third parties, D. J. Harrison, Humble and others to continue in force respondent's leases covering the interest owned in severalty by these third parties, and that such third-party agreements effectively continued the leases in full force as to the Sergent interest owned by respondent.

This position cannot be sound. Respondent owned both the Sergent fee in severalty and the leases covering this fee. Under the record, it was free to contract with third parties as to the sulphur they owned in severalty without in any way affecting its own Sergent fee interest. I do not subscribe to the theory advanced by petitioners that in instances after the primary term of a lease has expired, one owner in severalty of an undivided interest in the land can be bound by an extension executed by another who owns a different undivided interest in severalty. A contract with third parties based upon different considerations as to their interest only cannot in any manner subject entirely different property to the terms of the contract.

We must look to the contractual considerations between the parties (contained in the Sergent-Gulf deed) and set out in the seven enumerated reservations. That which was reserved is clearly identified in the seven enumerated reservations. It is from the specific language of each of the reservations that we gain knowledge as to what the parties intended Mrs. Sergent should have and own after her deed was delivered. Subsequent deeds and written demands afford no basis for determining the contractual rights between the parties as fixed in the deed from Mrs. Sergent to Gulf Production Company.

Furthermore, it is apparent to me at least that royalties could not be paid under the

lease provisions and under the deed provisions because of the differences in the two. The provisions of either the lease or the deed must control.

The deed from Mrs. Sergent to Gulf should be given effect as it is written. The parties are bound by the contractual provisions contained in the deed. The Sergent-Gulf deed contains no conflicting contractual provisions. See Woods v. Sims, 154 Tex. 59, 273 S.W.2d 617; Benge v. Scharbauer, 152 Tex. 447, 453, 259 S.W.2d 166; Thomas Gilcrease Foundation v. Stanolind Oil & Gas Co., 153 Tex. 197, 266 S.W.2d 850; Adams v. Duncan, 147 Tex. 332, 215 S.W.2d 599; Duhig v. Peavy-Moore Lumber Co., 135 Tex. 503, 144 S.W.2d 878.

A reasonable construction of the Sergent-Gulf deed leads to the natural conclusion that the rule stated in Benge v. Scharbauer, supra, and Thomas Gilcrease Foundation v. Stanolind Oil & Gas Co., supra, both by this Court, should be applied in this case. The rule announced in those cases is simply this, as stated in the Benge case [152 Tex. 447, 259 S.W.2d 168]:

" * * * One-eighth of the bonuses, rentals and royalties normally would go to the grantors as owners of a ⅛th interest in the minerals and ⅝ths of bonuses, rentals and royalties would normally go to the grantee as the owner of a ⅝ths interest in the minerals. *But are not the owners of such interests in the minerals free to agree, if they desire to do so, that their fractional interests in bonuses, rentals and royalties under leases to be executed shall be in different amounts from what they normally would be?* [Emphasis added.]

"The fractional part of the bonuses, rentals and royalties that one is to receive under a mineral lease usually or normally is the same as his fractional mineral interest, but we cannot say that it must always be the same. The parties owning the mineral interests may make it different if they intend to do so and plainly and in a formal way express that intention. Here that intention is expressed by clear language in the deed that leases executed by the grantee under the power given shall provide for the payment of ⅜ths of all bonuses, rentals and royalties to the grantors. The provision is not an agreement that the parties to the deed shall participate in the bonuses, rentals and royalties in proportion to their ownership of mineral interests. It is rather a contractual provision that the grantors shall receive a specified part of the bonuses, rentals and royalties; namely, ⅜ths."

In the Gilcrease case, the contention was that the royalties must be paid according to mineral ownership. This Court rejected such contention when it said [153 Tex. 197, 266 S.W.2d 854]: "This contention must be overruled. In the recent case of Benge v. Scharbauer, 152 Tex. 447, 259 S.W.2d 166, decided by this Court, it is held that while normally royalty is paid in exact proportion to the ownership, there is no basis for saying that the parties cannot contract for a different result."

It is well settled that the owners of land may reserve to themselves minerals or mineral rights, including the oil, or any right or ownership therein. *The deed from Mrs. Sergent to Gulf Production Company embraces a plain and unambiguous contract that Mrs. Sergent's fee interest should pass to Gulf Production Company, but that she would reserve specific royalties, so that the royalties would not be paid normally, that is, "in exact proportion to ownership" (which would have given Gulf all royalties), but would be paid in "different amounts from what they normally would be", that is, instead of Gulf taking all of the 14-cent royalty allocable to the undivided fee interest conveyed to it by Mrs. Sergent, Gulf would have the 14 cents less the amount reserved by Mrs. Sergent.*

I see no logical reason why a contract and agreement such as we have here, wherein Gulf agreed to pay Mrs. Sergent 25 cents per ton of 2240 pounds on all sulphur produced and marketed from the west 400 acres of said above described premises, is not enforceable, even admitting that the royalty of 25 cents which was reserved was more than she owned after having conveyed a great portion of her royalty to others. It may be true that a reservation or exception is not in a strict sense a conveyance, but I think that Gulf, if it desired, could have contracted to pay to Mrs. Sergent 25 cents per ton regardless of her ownership, and under the above quoted authorities such a contract is permissible and binding. Such an agreement does not affect the title of third parties, that is, it will not diminish the title of any of Mrs. Sergent's grantees who acquired interest prior to the Sergent-Gulf deed in September 1931.

When Mrs. Sergent conveyed her fee to her lessee, Gulf Production Company, she effectively agreed to and did waive the entirety clause in the leases, for she in fact conveyed everything she owned except the particular specified benefits set out in her reservations in the deed.

The Sergent deed contains a "subject to" clause in the granting clause which reads, "and subject to the mineral and/or royalty reservations and exceptions hereinafter set out."

The deed contains a second, "subject to" clause which provides that Mrs. Sergent's deed was subject to the terms and conditions of existing leases and conveyances. Without this provision, her deed anyway would have been legally "subject to" the same leases and conveyances because they were already of record in Liberty County. This "subject to" provision was not written to conflict with the "subject to" provision in the granting clause but to prevent Mrs. Sergent's deed from conveying upon its face properties that she had theretofore conveyed. Without this her warranty would have been breached at the instant she delivered her deed to Gulf. Duhig v. Peavy-Moore Lumber Co. and Benge v. Scharbauer, supra.

I think the two "subject to" clauses, the one in the granting clause, and the one following the description, emphasize two harmonious intentions—the first to require observance of her reservations, and the second to protect her warranty.

I see no reason why any special weight should be given to the words in the deed: "subject, however, to the terms and conditions" of existing leases and conveyances.

The term "subject to" the terms and conditions of prior leases and conveyances did not create rights, but was a term of qualification and not of contract. See Kokernot v. Caldwell, Tex.Civ.App., 231 S.W.2d 528, 531, er. ref.; Alfrey v. Ellington, Tex.Civ. App., 285 S.W.2d 383, er. ref. n. r. e.

The deed from Mrs. Sergent to Gulf contains the following clause:

"It is expressly understood and agreed that the reservations and exceptions hereinabove enumerated shall be perpetual and shall apply whether such oil, gas, casinghead gas and/or gasoline, sulphur and/or other minerals is produced under the existing or any future lease or leases by the lessee or lessees therein or by the grantee herein, its successors and assigns, or otherwise."

In conveying to Gulf her entire mineral fee, Mrs. Sergent knew that the royalties normally would be paid to Gulf and the other fee owners according to their respective mineral ownerships. As a part of the consideration for her mineral fee and apportioned royalties, she reserved therefrom the specified fractional and money royalties upon which she and Gulf had agreed.

Mrs. Sergent and Gulf could have provided that, for so long as the leases were in effect, such reserved royalties were to be apportioned in accordance with the terms

of the leases, but instead, they provided that her reserved royalties should be perpetual, as set out above. With the mineral fee Gulf acquired the apportioned royalty that normally followed the quantum of mineral ownership, and in accordance with the contract Mrs. Sergent and Gulf agreed that out of the apportioned royalties and the minerals, she would receive the specific royalties set out in her deed, nothing more, nothing less. If the reservations as written cannot legally function, they are not reservations.

Petitioners admit that "without some form of reservation or exception such royalty interest as Mrs. Sergent owned would have passed to the grantee, Gulf Production Company." For the respondent to recover it is not necessary and it does not challenge the validity of the apportionment provisions in the leases. It is well established that royalties, apportioned, or other kind, may be freely conveyed, or reserved, in whole or in part. See Thomas Gilcrease Foundation v. Stanolind Oil & Gas Co., supra, and Benge v. Scharbauer, supra. The Gilcrease case stated the rule that "while normally royalty is paid in exact proportion to the ownership, there is no basis for saying that the parties cannot contract for a different result" and further stated the rule that "it is well settled that the owners of land may reserve to themselves minerals or mineral rights, including the oil or any right or ownership therein."

These authorities lead me to answer the question here presented in the affirmative. The question here is: "Could the owner of the minerals and the allocable royalty, in conveying the mineral fee, retain a part of the royalty previously owned, or contract with her grantee, as a part of the consideration for her conveyance for different royalties than those previously owned?" See Iskian v. Consolidated Gas Utilities Corp., Okl., 251 P.2d 1073; Harley v. Magnolia Petroleum Co., 378 Ill. 19, 37 N.E.2d 760, 137 A.L.R. 900.

In the case at bar the leases permitted assignments in whole or in part. Mrs. Sergent was free to convey the land, the minerals, and the royalty, in whole or in part. She was free to agree with her grantee as to what royalties she would reserve from the conveyance. After she had sold the larger part of her fee interest, she was free to, and did, sell to Gulf Production Company all title that she had remaining, and in her deed she specifically reserved enumerated royalties different from those previously owned. Some of the royalties reserved in the deed (whether to be apportioned or not) were not created under the terms of the leases. For example, the casinghead gas royalty payable under the leases based on four cents per 1,000 cubic feet was not reserved, but a new casinghead gas royalty based on the actual value of the gas sold was reserved. The royalty on casinghead gasoline is mentioned in the deed, not in the leases. The $100 per well per year dry gas royalty payable under the leases was not reserved in the deed, but instead a royalty based on the value of dry gas sold was contracted for.

When we examine the deed to determine what Gulf acquired, it is necessary to look to the contractual considerations between the parties and set out in the enumerated reservations. As heretofore indicated, reservations cannot be made by implication. There is no reservation in her deed that she reserved all of the royalty that she owned before she executed the deed. As was said by this Court in the case of Sharp v. Fowler, 151 Tex. 490, 252 S.W.2d 153, 154: "A reservation of minerals to be effective must be by clear language. Courts do not favor reservations by implication."

In regard to the perpetual royalty provision, that provision can only apply to the leases if the deed provisions are stricken, and can only apply to the deed if the lease provisions are stricken. Either the lease provisions or the deed provisions must fall. Mrs. Sergent certainly intended her deed to be her final act with respect to the property. Obviously she expected no reversion to her-

self under the terms of the deed. All she could possibly expect was the payments to her in perpetuity as set out in the deed. She knew that her leases were determinable fees, and that the entirety clauses would lapse with the leases. She knew that her deed was a fee conveyance in perpetuity. I think it is conclusive that when she provided for perpetual royalties she intended to and did mean perpetual under the perpetual fee conveyed by the deed, and did not mean perpetual under the determinable fee vested under the lease. It seems to me that the recitations contained in the deed from Mrs. Sergent to the petitioners, which was executed long after the Sergent-Gulf deed, are afterthoughts and cannot have the effect of fixing and determining the interests conveyed and reserved in the former deed.

The two leases involved were "unless" leases that terminated upon the failure of production. The parties stipulated there was no production of oil, gas or other minerals from any of the land between June 30, 1933 and January 1, 1947, a nonproduction period of 13½ years. The "unless" leases, after the termination in 1931 of the primary terms, depended for their very lives upon production which ceased before July 1, 1933. When production ceased, the "unless" leases terminated, without notice to and without action by either lessor or lessee. See Tennant v. Matthews, Tex.Civ. App., 19 S.W.2d 1115; Humble Oil & Refining Co. v. Davis, Tex.Com.App., 296 S.W. 285; Hamilton v. Baker, 147 Tex. 240, 214 S.W.2d 460. Each of the leases involved was to terminate at the end of six months "unless" there was actual drilling during that period, or "unless" the specified rental was paid. Production at the end of the primary term kept the leases alive until June 30, 1933. The fact that minerals could have been produced, although none was produced for 13½ years, did not keep the leases alive. Neither did the mere discovery of sulphur without production continue the leases forever. See Texas Company v. Davis, 113 Tex. 321, 254 S.W. 304, 255 S.W. 601; W. T. Waggoner Estate v. Sigler Oil Co., 118 Tex. 509, 19 S.W.2d 27. I have heretofore mentioned and, for emphasis, I here repeat that the fact that respondent entered into new contracts with third parties and paid to them large sums of money to keep respondent's sulphur rights alive as to properties wholly owned by such third parties does not, for petitioners' benefit, keep alive its own leases on its own land purchased from Mrs. Sergent. The third parties owned no interest in Mrs. Sergent's interest, and her interest is now owned by respondent.

I disagree with the majority wherein it is held that the leases did not merge into the fee. Respondent owned the separable fee, and when it acquired the sulphur leaseholds theretofore carved out of the fee, the two estates merged. See West v. Sigler, Tex.Civ.App., 265 S.W.2d 618, er. ref. n. r. e.; State v. Moak, 146 Tex. 322, 207 S.W.2d 894; Sharp v. Fowler, Tex.Civ.App., 248 S.W.2d 322, affirmed 151 Tex. 490, 252 S. W.2d 153.

Under its deed from Mrs. Sergent, respondent was under no duty to develop or produce. The leases imposed obligations upon the fee owner. Respondent acquired the leases, therefore, the lessee obligations ceased.

Petitioners argue that intervening estates prevented the leases from merging into the fee. This position is not supported by the record or by authority. *All the land* Mrs. Sergent conveyed to Gulf was acquired by respondent, and *all sulphur leases covering it were acquired by respondent,* before 1934. This being true, the fact that respondent expended large sums to acquire interests of third parties *in the other lands owned by the third parties* in no wise prevented the merger of its sulphur leases into its separable fee purchased from Mrs. Sergent. Suppose Mrs. Sergent still owned her fee interest, and before 1934 had acquired the sulphur leasehold rights, could it be successfully argued that respondent's contracts with third party interests prevented her leases from merging into her fee? Respon-

dent lawfully acquired the fee and lawfully acquired the leases. The original leases permitted assignment. Mrs. Sergent's deed permitted Gulf or its vendee to acquire the leases. Mrs. Sergent's fee and the leasehold estates, vested in respondent, are as separate estates in respondent as they would be if Mrs. Sergent still owned them. Respondent having acquired the full title to the fee and having acquired the leases, the two estates completely merged to the destruction of the leases.

In order for petitioners to recover in this case they must avoid this Court's holding in the Gilcrease and Benge cases, supra, that *normally royalty follows the mineral ownership but that parties may contract for a different result.* I have been unable to find a single case that sustains petitioners in their contention that Mrs. Sergent continued to own the same royalties after her deed to Gulf as she owned before the deed. See Thomas Gilcrease Foundation v. Stanolind Oil & Gas Co., supra; Harley v. Magnolia Petroleum Co., supra; Gypsy Oil Co. v. Schonwald, 107 Okl. 253, 231 P. 864; Eason v. Rosamond, 173 Okl. 10, 46 P. 2d 471; Schrader v. Gypsy Oil Co., 38 N.M. 124, 28 P.2d 885. As I understand these cases, not one of them held that the owner after conveying all minerals still continued to own all the royalty because of prior lease provisions. In the Gilcrease case, Gilcrease Oil Company owned ¼th of the minerals in the west part of the land and ¾ths of the minerals in the east part. This Court held the entirety clause applicable to the *mineral ownerships* of Gilcrease Oil Company. *No question of right to royalty without mineral ownership was involved.*

It is my conclusion that the contention of petitioners should not be upheld. Mrs. Sergent's entire royalties would have vested in Gulf Production Company had there been no specific royalty reservation in her deed. See Harris v. Currie, 142 Tex. 93, 176 S.W. 2d 302. Had her deed not reserved the specified royalties enumerated therein, she would have owned no royalty to convey to petitioners. In my judgment, the basis for the majority opinion must fall. The provisions of the entirety clauses became inoperative if for no other reason because Mrs. Sergent was free to contract and did so contract with Gulf for a different royalty reservation than normally would follow her minerals conveyed to Gulf Production Company.

It follows that, in my opinion, the judgments of the trial court and Court of Civil Appeals should be affirmed.

CULVER, J., joins in this opinion.

CALVERT, Justice (concurring).

I do not wish to be understood as agreeing that the entirety clause in the leases involved in this case operates to permit or requires one owning only an interest in royalty derived from a part of the leased premises to share with others, proportionately, in the royalties from the entire leased premises. The parties have assumed that it does; and, accordingly, so has the court.

An entirety clause, like all other provisions of a lease contract, should be interpreted and applied according to the intention of the parties. I doubt that the parties to the instant leases intended that the entirety clause operate on ownership of royalty divorced from ownership of the mineral fee estate.

The principal purpose of the more common entirety clause, such as was involved in Thomas Gilcrease Foundation v. Stanolind Oil & Gas Co., 153 Tex. 197, 266 S.W. 2d 850, and Gypsy Oil Co. of Schonwald, 107 Okl. 253, 231 P. 864, is to relieve the lessee of undue burdens incident to a fractionalized ownership of the mineral fee estate. That is the recited purpose of the clauses. It is also the recited purpose of the clause in the instant lease. The courts have recognized that the clause operates also to relieve inequities among owners of parts of the leased fee resulting from decisions such as Japhet v. McRae, Tex.Com.App., 276

S.W. 669 and Galt v. Metscher, 103 Okl. 271, 229 P. 522, even when the ownership is of undivided interests. Thomas Gilcrease Foundation v. Stanolind Oil & Gas Co., supra. But its operation for this latter purpose, when its recited purpose is to relieve the burdens of the lessee, is purely incidental. It may be given that effect only when its language reasonably permits.

Whether an entirety clause similar to those involved in the Gilcrease and Schonwald cases operates on ownership of royalty only has not been decided in this state. The question is an important one—too important to be decided incidentally when it has been neither presented, briefed nor argued. Decisions from other jurisdictions are not entirely harmonious. As indicating that it does so operate, see Gypsy Oil Co. v. Schonwald, 107 Okl. 253, 231 P. 864; Schrader v. Gypsy Oil Co., 38 N.M. 124, 28 P.2d 885; Eason v. Rosamond, 173 Okl. 10, 46 P.2d 471, and Thomas v. Ley, 177 Okl. 150, 57 P.2d 1186. Of the cited cases the Schonwald case is most closely in point, and as to the holding in that case Summers, in his work on Oil and Gas, Permanent Edition, Vol. 3, p. 544n, has commented: "It seems somewhat doubtful whether this provision in a lease was intended to apply to the assignment of royalty interests." As indicating that it does not so operate, see Iskian v. Consolidated Gas Utilities Corp., 207 Okl. 615, 251 P.2d 1073. For a discussion of the distinguishing features of the foregoing cases, see Apportionment of Royalty to Separate Tracts by Hardwicke, 32 T.L.R. 660, 665–667.

There is much less reason for saying that the entirety clause in the instant leases operates on ownership of royalty only. The relevant part of the clause reads as follows: "Lessors hereby covenant * * * that in case of any change of ownership of said land, or part thereof, * * * all rentals and royalties accruing hereunder shall be paid to the new owners in proportion to their ownership of the whole of the land hereby leased so that no owner of a segregated part of said land shall be entitled to the whole royalties accruing from develop-ments on said segregated tract, but only to such part of such royalty as the acreage in his tract is to the whole acreage embraced in this lease; * * *." The very wording of the clause indicates to my mind, rather clearly, that it was intended to operate only to apportion royalty where there was a change in ownership of a part of the mineral fee. It does not answer this obvious fact to say that it operates where there is a change in ownership of a part of the *land* and that under our decisions royalty is an interest in land. In writing the clause the parties used the words "royalty" and "land" to refer to wholly different interests, thereby disclaiming any intent that the word "royalty" should mean the same thing as the word "land". A casual analysis will supply proof. The clause provides that in case of any change of ownership of *said land* (referring to the leased premises) "all *rentals* and royalties" accruing under the lease shall be paid "to the new owners in proportion to their ownership of the whole of the land." Would we say that a purchaser of a part of the royalty from a segregated part of the leased premises became entitled to a proportionate part of the rentals? The requirement of proportionate payment of *rentals* and *royalties* to new owners is according "to their ownership of the *land hereby leased.*" Could it be held that *royalties* are *hereby leased?* It is declared that the apportionment is made "so that no owner of a segregated part of *said land* shall be entitled to the whole royalty accruing from *developments* on said *segregated tract,* but only to such part of such royalty as the acreage in his *tract* is to the whole acreage in this lease." I deem it unlikely that any lessee ever engaged in *developments* on segregated royalty, or that any one ever thought of or referred to a royalty interest as a *segregated tract.*

All in all, it is doubtful, to say the least, that the entirety clause in the instant leases was intended by the parties to effect an apportionment among royalty owners who own no interest in the mineral fee estate. The Gilcrease case is certainly no authority for saying that it was. I am not at all cer-

686

tain that the clause could reasonably be given that effect even to relieve the lessee of burdens incident to fractionalization of ownership of royalty only. There is much less reason for saying that it could reasonably be given that effect to relieve inequities among owners of royalty only. It is no answer to say that some entirety clauses, or pooling agreements, are so worded as to require an apportionment of the whole royalty among owners of royalty derived from separate parts of the leased premises. That simply means that such other clauses are different from this one, and would be no sound reason for torturing the language of this one into a meaning which the parties to the lease did not intend it to have.

Inasmuch as the question here discussed was neither presented, briefed nor argued, our incidental determination thereof seems not to be stare decisis. Griffin v. Chubb, 7 Tex. 603, 609–610; 14 Am.Jur., Courts, § 73, p. 290 and § 76, p. 291. I, therefore, regard the question as yet an open one and join in assuming that the entirety clause required an apportionment of royalty by and among owners of royalty who own no part of the mineral fee estate.