

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1182-20

### THE STATE OF TEXAS, Appellant

### v.

### TRENTON KYLE GREEN, Appellee

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SIXTH COURT OF APPEALS
### GREGG COUNTY

## NO. PD-1213-20

### BOBBY CARL LENNOX AKA BOBBY CARL LEANOX, Appellant

### v.

### THE STATE OF TEXAS

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SIXTH COURT OF APPEALS
### LAMAR COUNTY

SLAUGHTER, J., delivered the opinion of the Court in which KELLER, P.J., HERVEY, RICHARDSON, NEWELL, KEEL, WALKER, and MCCLURE, JJ., joined. YEARY, J., concurred.

**O P I N I O N**

In these consolidated cases, we must interpret the 2017 amendments to Texas Penal Code Section 32.21, the forgery statute. *See* TEX. PENAL CODE § 32.21. The statute provides that a person commits an offense if he "forges a writing with intent to defraud or harm another." *Id.* § 32.21(b). This base-level offense is a Class A misdemeanor. *Id.* § 32.21(c). In 2017, the Legislature added a new subsection, (e-1), which sets forth an alternative "value ladder" offense-classification scheme. *See id*. § 32.21(e-1). Pursuant to this value-ladder provision, "[i]f it is shown on the trial of an offense that the actor engaged in the conduct to obtain or attempt to obtain a property or service," then the offense classification is based on the value of any property or services at issue. *Id.* The possible offense level starts at a Class C misdemeanor (for forgeries involving property or services valued at less than $100) and extends to a first-degree felony (for forgeries involving property or services valued at over $300,000). *Id.* This value-ladder provision, however, did not replace two original subsections in Section 32.21 setting forth exceptions to the default offense classification—subsections (d) and (e). Those original subsections independently provide that forgery of a specified *type* of writing (regardless of the defendant's purpose for committing forgery or the value of any goods or services involved) is a state-jail felony or a third-degree felony, respectively. *See id.* § 32.21(d) (providing that it is a state-jail felony to commit forgery of one of the enumerated types of financial instruments), (e) (providing that it is a third-degree felony to commit forgery of currency or other governmental records or instruments). But the 2017 amendments also added

language to subsections (d) and (e) stating that those provisions are "[s]ubject to Subsection (e-1)." *Id.*[1] The question we must resolve here is how to apply Section 32.21's competing

---

[1] The relevant portions of Section 32.21 provide:

(b) A person commits an offense if he forges a writing with intent to defraud or harm another.

(c) *Except as provided by Subsections (d), (e), and (e-1)*, an offense under this section is a Class A misdemeanor.

(d) *Subject to Subsection (e-1)*, an offense under this section is a state jail felony if the writing is or purports to be a will, codicil, deed, deed of trust, mortgage, security instrument, security agreement, credit card, check, authorization to debit an account at a financial institution, or similar sight order for payment of money, contract, release, or other commercial instrument.

(e) *Subject to Subsection (e-1)*, an offense under this section is a felony of the third degree if the writing is or purports to be:

(1) part of an issue of money, securities, postage or revenue stamps;

(2) a government record listed in Section 37.01(2)(C); or

(3) other instruments issued by a state or national government or by a subdivision of either, or part of an issue of stock, bonds, or other instruments representing interests in or claims against another person.

(e-1) *If it is shown on the trial of an offense under this section that the actor engaged in the conduct to obtain or attempt to obtain a property or service*, an offense under this section is:

(1) a Class C misdemeanor if the value of the property or service is less than $100;

(2) a Class B misdemeanor if the value of the property or service is $100 or more but less than $750;

(3) a Class A misdemeanor if the value of the property or service is $750 or more but less than $2,500;

(4) a state jail felony if the value of the property or service is $2,500 or more but less than $30,000;

(5) a felony of the third degree if the value of the property or service is $30,000 or more but less than $150,000;

offense-classification provisions when, based on the facts of a given case, an offense could fall either under the value ladder in subsection (e-1) (based on the defendant's purpose of obtaining property or services), *or* the type-of-writing provisions in subsections (d) and (e) (based on the particular type of writing at issue), with the offense potentially receiving a vastly different classification and range of punishment depending on which subsection applies.

This question was first presented to the Sixth Court of Appeals in two separate cases. *See State v. Green*, 613 S.W.3d 571 (Tex. App.—Texarkana 2020); *Lennox v. State*, 613 S.W.3d 597 (Tex. App.—Texarkana 2020) (op. on reh'g). Though the cases are procedurally distinguishable, in both cases the defendants were charged with felonies under the type-of-writing provisions in Section 32.21(d) and (e). Each defendant argued that he was instead entitled to be prosecuted and convicted under the value ladder in subsection (e-1), based on his purpose of obtaining property through the forgery. Notably, if the value ladder were held to apply, each defendant's offense would have been classified as a Class C or Class B misdemeanor, given the relatively low dollar value of the property at issue.

To resolve this issue, the court of appeals reached three main conclusions about Section 32.21, as amended:

(1)    The "[s]ubject to Subsection (e-1)" clause in subsections (d) and (e) means that those provisions are subservient to the provisions in subsection (e-1);

---

(6) a felony of the second degree if the value of the property or service is $150,000 or more but less than $300,000; and

(7) a felony of the first degree if the value of the property or service is $300,000 or more.

TEX. PENAL CODE § 32.21 (emphasis added).

thus, when subsection (e-1) applies to the facts of the case (i.e., the defendant committed forgery "to obtain or attempt to obtain a property or service"), the offense classifications in subsection (e-1) control over those in subsections (d) or (e). *Green*, 613 S.W.3d at 583.

(2)     Subsection (e-1) constitutes a statutory element that must be litigated at the guilt phase of trial, rather than a punishment-phase issue. *Id.* at 590.

(3)     Because Subsection (e-1) is controlling over Subsections (d) and (e), if the State wants to bypass the value ladder in subsection (e-1) to instead bring a forgery prosecution under the felony provisions in Subsections (d) or (e), it must negate applicability of the value ladder by alleging and proving that the defendant had a non-property-related "purpose" for committing the forgery. *Id.* at 595.

The court of appeals reached this final conclusion in spite of the fact that the statutory language in Subsections (d) and (e) contains no "purpose" requirement—only subsection (e-1)'s value ladder contains such a requirement. Nevertheless, the court of appeals reasoned that applying a non-statutory "purpose" element was required in forgery prosecutions under subsections (d) or (e) because the defendant's "purpose" effectively operates as an "enhancing element" that raises the possible range of punishment, such that due process principles under *Apprendi v. New Jersey* would require the State to allege and prove this aggravating fact at trial. *Id.* at 596 (citing 530 U.S. 466 (2000)). Under this understanding of the statutory requirements, the court of appeals ruled in favor of the defendants in both cases. *Green,* 613 S.W.3d at 597; *Lennox*, 613 S.W.3d at 607.

We commend the court of appeals' efforts to untangle the highly complex issues created by the amendments to Section 32.21, but we agree only in part with its analysis. We agree that the "[s]ubject to Subsection (e-1)" language in subsections (d) and (e) means that those provisions are subordinate to subsection (e-1) whenever the facts necessary to

trigger (e-1) are present. We further agree that (e-1) constitutes an element of the offense rather than a punishment-phase issue. But we disagree on two points: (1) the court's application of *Apprendi* principles to this situation, and (2) its adoption of a non-statutory "purpose" element for all forgery cases brought under subsections (d) or (e).

The court of appeals' approach in these cases was based on a misunderstanding of Section 32.21's structure. The statute contains four separate forgery offenses in subsections (b), (d), (e), and (e-1). Each subsection constitutes a facially valid offense that the State may rely upon in *charging* a forgery by tracking the statutory language. Contrary to the court of appeals' reasoning, subsections (d) and (e) do not function as enhancing elements to an offense under subsection (e-1). Because *Apprendi* applies only to enhancing elements and has no application where entirely separate offenses are at issue, the court of appeals' analysis under *Apprendi* was flawed. Accordingly, if the State seeks to bring a felony forgery prosecution under Section 32.21(d) or (e), it may simply track the statutory language. It is not required to allege and prove a non-statutory "purpose" element to show that the value ladder is inapplicable.

However, if a defendant is charged for felony forgery under subsections (d) or (e) but the facts at trial ultimately show that he "engaged in the conduct to obtain or attempt to obtain a property or service," *see* TEX. PENAL CODE § 32.21(e-1), then we agree that, given the "[s]ubject to Subsection (e-1)" language in subsections (d) and (e), a defendant is entitled to be *convicted* and *punished* under the provisions in the value ladder, if doing so would result in a reduced offense classification and range of punishment. Under those circumstances, the State has effectively charged the defendant under the wrong statutory

subsection within Section 32.21. The defendant may raise such an issue at trial, and such error may be remedied by the trial court or on appeal, subject to any applicable preservation requirements.

Because the court of appeals operated under a mistaken understanding of the structure of Section 32.21 and the requirements of *Apprendi*, we vacate its decision in both cases and remand for further proceedings under the appropriate framework as set forth more fully below.

## I.     Background

Although the consolidated cases before us both pertain to the proper interpretation of the Texas forgery statute, each case presents this question in a different procedural posture. We address the relevant background for each case below.

### A.     *State v. Green*

Appellee Trenton Kyle Green was indicted on one count of third-degree felony forgery under Penal Code Section 32.21(e) for forging currency. *See* TEX. PENAL CODE § 32.21(e) (stating that "[s]ubject to Subsection (e-1), an offense under this section is a felony of the third degree if the writing is or purports to be . . . part of an issue of money"). The indictment alleged that Green made a counterfeit $20 bill and did so "with the intent to defraud or harm another." *See id.* § 32.21(b). Nothing in the indictment addressed Green's purpose for the forgery or, specifically, whether he engaged in the forgery to obtain property or services.

Green filed a pretrial motion to quash the indictment. In his motion, Green noted that the facts would show he attempted to pass a counterfeit $20 bill in exchange for a $2

cigarette lighter. He asserted that the allegations that he "made" counterfeit currency and that he forged the writing with the "intent to defraud or harm another" would require showing that he committed the forgery to obtain property or services. Therefore, Green argued that he must be prosecuted under subsection (e-1)'s value ladder, requiring a Class C misdemeanor charge rather than a third-degree-felony charge under subsection (e). *See id.* § 32.21(e-1)(1) ("If it is shown on the trial of an offense under this section that the actor engaged in the conduct to obtain or attempt to obtain a property or service, an offense under this section is . . . a Class C misdemeanor if the value of the property or service is less than $100."). Green further argued that the district court does not have misdemeanor jurisdiction, so it lacked jurisdiction over the case. The trial court agreed and granted Green's motion to quash. The State appealed.

On appeal, the State did not dispute Green's description of the underlying facts. Instead, it contended that Section 32.21 afforded it prosecutorial discretion to choose under which subsection to proceed—either subsection (e-1)'s value ladder, or subsection (e) based on the type of writing involved. *See id.* § 32.21(e), (e-1). The State contended that it was immaterial whether the evidence would ultimately show that Green attempted to use the counterfeit $20 bill to obtain property because that issue had no bearing on his liability for felony forgery of currency under subsection (e). Alternatively, the State argued that Green's indictment alleged a "facially valid" and complete felony offense, notwithstanding the Legislature's addition of subsection (e-1) to Section 32.21. Thus, it asserted, even if the value ladder might ultimately apply to Green's offense once the facts were adduced at trial, no such factual development had yet occurred, and a subsection (e-1) inquiry into Green's

purpose for committing forgery would require the trial court to improperly look beyond the four corners of the indictment.

The court of appeals rejected the State's arguments. Regarding prosecutorial discretion, the court of appeals held that the value ladder in Section 32.21(e-1) is mandatory whenever the defendant engages in forgery "to obtain or attempt to obtain a property or service;" the State does not have discretion to bypass subsection (e-1). *Green*, 613 S.W.3d at 583. The textual basis for this conclusion was the amended language making subsections (d) and (e) "[s]ubject to Subsection (e-1)." *Id.* The court of appeals found that this language "unambiguously expressed [the Legislature's] intent that, if the defendant's offense fits within the specific language of subsection (e-1)—i.e., if it is shown at trial that the defendant 'engaged in the conduct to obtain or attempt to obtain a property or service'— then he must be prosecuted under the applicable provision of subsection (e-1)." *Id.*[2]

But the court of appeals recognized that this conclusion did not fully resolve how the competing subsections within Section 32.21 should apply in practice. To address this, the court first considered the possibility that the Legislature intended for subsection (e-1) to operate as a punishment-phase issue. *Id.* at 590. The court, however, rejected this interpretation and instead held that subsection (e-1) was intended to operate as an element

---

[2] In reaching its conclusion that the provisions in subsection (e-1) are not discretionary, the court of appeals additionally considered several extra-textual factors, including the *in pari materia* doctrine, the vagueness doctrine, and the consequences of the State's proposed construction. *See Green*, 613 S.W.3d at 583–89. As we explain further below, we find that the "subject to" clause in subsections (d) and (e) is plain in indicating that those subsections are subservient to (e-1), such that (e-1) controls in the event of a conflict. Therefore, resort to extratextual factors for this aspect of our statutory analysis is unnecessary, and we do not review these portions of the court of appeals' analysis.

of the offense of forgery. *Id.* To explain its reasoning, the court relied on this Court's decision in *Oliva v. State* and determined that, although subsection (e-1) uses language typically associated with punishment issues (i.e., "if it is shown on the trial of an offense"), two other considerations signaled that (e-1) should be treated as an element of the offense: First, the "'statutory aggravating fact would be part of the circumstances of the offense on trial,'" and second, subsection (e-1) does not use the words "punished" or "punishable" but instead provides that an offense *is* a particular grade of misdemeanor or felony. *Id.* at 590–91 (quoting *Oliva v. State*, 548 S.W.3d 518, 530 (Tex. Crim. App. 2018)).

Having found that subsection (e-1) was an element rather than a punishment issue, the court of appeals then held that the "[s]ubject to Subsection (e-1)" language in subsections (d) and (e) meant that forgeries could be "charged under subsections (d) and (e) only when they cannot be charged under subsection (e-1)." *Id.* at 591. Under this understanding of the statutory framework, the court of appeals determined that, to bring a successful prosecution under subsections (d) or (e), the State "must prove that the defendant forged the writing for a different purpose *other than* 'to obtain or attempt to obtain a property or service,'" thereby proving that the value ladder in (e-1) was inapplicable. *Id.* at 592 (emphasis added).

Finally, in Part III of its opinion, the court of appeals considered what the State must allege in a forgery indictment to properly bring a prosecution under the felony provisions in subsections (d) or (e). *Id.* at 593. The court recognized that an indictment that tracks the statutory elements is ordinarily sufficient, but it noted that "the Due Process Clause of the Fourteenth Amendment sometimes requires that additional matters be alleged in the

indictment and proved beyond a reasonable doubt." *Id.* at 595 (citing *Apprendi*, 530 U.S. at 469, 490 (holding that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt")). Relying on this principle, the court of appeals reasoned that because all forgery offenses could be as low as a Class C misdemeanor under Subsection (e-1)'s value ladder, if the State instead sought to pursue a felony conviction under subsections (d) or (e), it must allege in the indictment and prove the aggravating fact that would carry the defendant's offense beyond the scope of the value ladder and permit prosecution under subsections (d) or (e)—that is, "that the defendant forged the writing for a different purpose *other than* 'to obtain or attempt to obtain a property or service.'" *Id.* at 592 (emphasis added); *see also id.* at 596 ("Where a forgery under the value ladder in subsection (e-1) would be a misdemeanor, the defendant's purpose in forging the writing is the 'core criminal offense element' that elevates the offense classification in a prosecution under subsection (d) or (e). Therefore, under *Apprendi*, the State must prove this enhancing element beyond a reasonable doubt . . . [and] must allege this enhancing element in the indictment.").

Applying this conclusion to Green's case, the court of appeals held that the indictment alleging an offense under subsection (e) for felony forgery of currency was deficient because it "failed to allege Green's purpose in forging the twenty-dollar bill," and therefore failed to apprise him of whether the facts alleged would give rise to a Class C misdemeanor or a third-degree felony offense. *Id.* at 597. The court further determined that, because the offense could in fact be a Class C misdemeanor, it was impossible to determine

from the face of the indictment whether the offense was a felony over which the trial court had jurisdiction. *Id.* The court accordingly upheld the trial court's ruling granting the motion to quash. *Id.*

### B.      *Lennox v. State*

The court of appeals issued its opinion in *Lennox* on the same day as its opinion in *Green,* relying in large part on its reasoning from *Green* to resolve the issues in *Lennox.* *See Lennox*, 613 S.W.3d at 597.[3] Unlike the situation in *Green*, however, Lennox did not file any pretrial motion to quash. Instead, he was tried and convicted on three counts of state-jail felony forgery under Section 32.21(d) for forging stolen checks in the amounts of $137, $130, and $150 and passing them at a convenience store. *See* TEX. PEN. CODE § 32.21(d) (stating that "[s]ubject to Subsection (e-1), an offense under this section is a state jail felony if the writing is or purports to be a . . . check"). Each count of the indictment alleged that Lennox, "with intent to defraud or harm another, pass[ed] to Nima Sherpa, a forged writing, knowing such writing to be forged, and such writing had been so made or completed that it purported to be the act of James McKnight, who did not authorize the act, and the writing was a check of the following tenor:" The indictment then included images of the forged checks. Following his conviction, after applying punishment enhancements, Lennox received a sentence of seventeen years' imprisonment on each count.

---

[3] The court of appeals' opinion in *Lennox* that is before us on discretionary review is its opinion on rehearing. In its original opinion, it reached a similar holding and granted Lennox a new punishment hearing. On rehearing, it later withdrew the original opinion and issued a substitute opinion.

On direct appeal, Lennox argued for the first time that his seventeen-year sentences were illegal because, given the value ladder in Section 32.21(e-1) and the value of the checks passed, his offenses were Class B misdemeanors. *See id.* § 32.21(e-1)(2) (providing that "[i]f it is shown on the trial of the offense . . . that the actor engaged in the conduct to obtain or attempt to obtain a property or service, an offense under this section is . . . a Class B misdemeanor if the value of the property or service is $100 or more but less than $750").[4] Though not raised as a freestanding point of error, Lennox also argued that the jury charge was erroneous because it improperly charged the offenses as state-jail felonies when they instead should have been charged as Class B misdemeanors. The court of appeals ultimately treated this issue as one of unobjected-to jury-charge error. *Lennox,* 613 S.W.3d at 601.[5] Relying on its reasoning in *Green*, the court held that the guilt-phase jury charge contained egregiously harmful error. *Id.* at 602. It found that, given the allegations in the indictment and the evidence presented at trial, the jury charge "should have charged the offenses as class B misdemeanors" under the value ladder in subsection (e-1). *Id.* at 604.

---

[4] Lennox also argued that the evidence was insufficient to show that he had the ability to pay court-appointed attorney's fees and that the trial court erred by failing to hold an evidentiary hearing on his motion for new trial. Given its decision to remand for a new punishment hearing based on harmful jury-charge error, the court of appeals did not reach these two additional issues. *Lennox*, 613 S.W.3d at 600.

[5] Though recognizing that Lennox had not expressly raised a claim of jury-charge error, the court of appeals determined that the issue was "fairly raised" in the course of his arguments pertaining to his illegal-sentence claim. *Lennox*, 613 S.W.3d at 601. The court further reasoned, "[W]here there is jury-charge error, we may address the question, even if the error is unassigned, and can reverse if the error caused egregious harm." *Id.* at 601–02 (citations omitted). The State has not challenged the propriety of the court of appeals' reframing of Lennox's issue as jury-charge error in this proceeding on discretionary review, and thus we do not directly consider that issue in this opinion.

Further, because Lennox's purpose in forging the checks was the element that would "elevate the offense from a class B misdemeanor under subsection (e-1)(2) to a state-jail felony under subsection (d), the failure to ask the jury to resolve that issue was error under *Apprendi*[.]" *Id.* (citing 530 U.S. at 469). Because Lennox did not object to the jury charge at trial, the court then examined the record for harm and found the error to be egregiously harmful. *Id.* at 604–05. Accordingly, the court of appeals reformed the judgments of conviction to three Class B misdemeanors and remanded the case to the trial court to hold a new punishment trial. *Id.* at 607.[6]

After the State sought discretionary review in each case, this Court granted review and consolidated the cases.[7]

---

[6] Justice Burgess, who authored the majority opinion in *Green*, concurred in *Lennox*. *See* 613 S.W.3d at 607 (Burgess, J., concurring). He opined that because the evidence adduced at trial "'effectively put [the trial court] on notice that the appellant was being prosecuted under the wrong statutory provision,' [ ] the trial court had an obligation to 'take[ ] steps to assure that the [defendant was] not being prosecuted, and more critically, *punished*, under the wrong statutory provision.'" *Id.* at 612 (quoting *Azeez v. State*, 248 S.W.3d 182, 194 (Tex. Crim. App. 2008)). Thus, in Justice Burgess' view, because the trial court should have *sua sponte* charged the jury on the Class B misdemeanor offense under subsection (e-1)(2), the charge was erroneous for omitting such an instruction. *Id.* at 613.

[7] The grounds on which we granted review in *Green* are,

1) The Court of Appeals decided an important question of state law that has not been, but should be, settled by the Court of Criminal Appeals, concerning whether the value ladder provisions of Section 32.21(e-1) of the Texas Penal Code are mandatory or whether those provisions only apply when specifically pled by the State.

2) The Court of Appeals decided an important question of state law that has not been, but should be, settled by the Court of Criminal Appeals, concerning whether the defendant's purpose for committing the forgery offense is an element of the offense under Section 32.21(e) of the Texas Penal Code.

In *Lennox*, the sole ground for review is:

## II.     Analysis of Section 32.21

On discretionary review, the State raises different arguments in each case in opposition to the court of appeals' holdings. In *Green*, the State re-urges its position that Section 32.21(e-1)'s value ladder is a "discretionary provision which can be alleged or not at the discretion of the prosecution." It contends that this conclusion is supported by the statute's plain language and that, in holding otherwise, the court of appeals misconstrued the "[s]ubject to Subsection (e-1)" language in subsections (d) and (e). Alternatively, the State contends that even if the value ladder is mandatory when raised by the facts, any such facts would not arise until the evidence is presented at trial. Accordingly, because the felony provisions in subsections (d) and (e) remain facially valid offenses, the indictment in Green's case tracking the statutory language in subsection (e) "still alleged a valid offense under Section 32.21(e) and thus should not have been quashed." The State further asserts that neither *Apprendi* nor the language of subsections (d) or (e) requires the State to allege the defendant's purpose for committing forgery in a prosecution under those subsections. Thus, there was "no justification for the court of appeals to write an additional element concerning a defendant's motive into Section 32.21(e)."

---

From the appellate court's statutory construction of section 32.21(e-1) of the Texas Penal Code, there was no jury charge error; but more importantly, this Court should resolve a jurisdictional conflict that now exists in Texas law as to how county and district attorneys in the State of Texas should correctly charge and prosecute criminal offenses for forgery of financial instruments—specifically, checks, which, as writings, serve a historic role in the forgery statute in Texas jurisprudence and the economies of Texas and the United States of America.

By contrast, in *Lennox*, the State takes the position that the Legislature intended for the value ladder in subsection (e-1) to operate as a punishment issue, rather than as an element of the offense of forgery. Under this proposed construction, the State could charge a forgery offense under the felony provisions in Section 32.21(d) or (e), and then, at the punishment phase, the defense could raise an issue under subsection (e-1) as a means of reducing the offense to a misdemeanor under the value ladder.[8] Under this interpretation, the State contends that the court of appeals erred by finding jury-charge error in Lennox's case because the offenses were properly charged as state-jail felonies at the guilt phase, and Lennox did not raise any objection at the punishment phase asking for a defensive jury instruction under subsection (e-1)'s value ladder.

At the outset, we reject the State's argument in *Green* that the value ladder is a discretionary provision that applies only when the State chooses to invoke it. The statutory language making subsections (d) and (e) "[s]ubject to Subsection (e-1)" plainly requires that, whenever the triggering clause of subsection (e-1) is satisfied (that is, when the facts show that the defendant engaged in the forgery "to obtain or attempt to obtain a property or service"), the offense classifications in subsection (e-1) control over those in subsections (d) or (e), and the offense level must be determined by the value of the property or services at issue. We also reject the State's argument in *Lennox* that subsection (e-1) constitutes a punishment issue rather than an element. Instead, after reviewing the approach outlined in

---

[8] The State, however, concedes that when the value ladder operates as an *aggravating* provision that would increase the offense classification beyond the state-jail and third-degree felony levels set forth in subsections (d) and (e), the purpose and amount requirements of subsection (e-1) are elements that must be alleged in the indictment to satisfy notice and due process requirements.

our decision in *Oliva,* 548 S.W.3d at 528, we hold that subsection (e-1) sets forth an element of a distinct forgery-to-obtain-property-or-services offense. We do, however, agree with the State's alternative argument in *Green* that the court of appeals erred in its application of *Apprendi* principles to this situation, which resulted in it improperly applying a non-statutory "purpose" element in felony forgery cases brought under subsections (d) and (e). Accordingly, while we agree in part with the court of appeals' reasoning, we vacate its decisions in both cases and remand for further proceedings.

### A.      Law of Statutory Interpretation

Statutory construction is a question of law that we review *de novo. Stahmann v. State,* 602 S.W.3d 573, 577 (Tex. Crim. App. 2020). In interpreting statutes, we focus our attention on the literal text of the statute in question and attempt to discern the fair, objective meaning of the text at the time of its enactment. *Watkins v. State*, 619 S.W.3d 265, 271–72 (Tex. Crim. App. 2021). We must presume that every word in a statute has been used for a purpose and that each word, phrase, clause, and sentence should be given effect if reasonably possible. *Id*. at 272. We read words and phrases in context and construe them according to rules of grammar and common usage. *Stahmann,* 602 S.W.3d at 577. In construing an amended statute, we consider the statutory language as if it had originally been enacted in its amended form, mindful that the Legislature, by amending the statute, may have altered or clarified the meaning of earlier provisions. *Watkins*, 619 S.W.3d at 272.

When the language of the statute is ambiguous or leads to absurd results, we may consider extra-textual factors in interpreting the statute. *Cortez v. State,* 469 S.W.3d 593,

598 (Tex. Crim. App. 2015). A statute is ambiguous when it may be understood by reasonably well-informed persons to have two or more different interpretations. *Id.* Extra-textual factors that we may consider to resolve ambiguity include: (1) the object sought to be attained by the Legislature; (2) the circumstances under which the statute was enacted; (3) the legislative history; (4) the common law or former statutory provisions, including laws on the same or similar subjects; (5) the consequences of a particular construction; (6) the administrative construction of the statute; and (7) the title or caption, preamble, and any emergency provision. TEX. GOV'T CODE 311.023; *Watkins*, 619 S.W.3d at 273.

**B.     The Texas Forgery Statute – Penal Code Section 32.21**

Pursuant to the 2017 amendments to Section 32.21,[9] the statute provides in relevant part:

> (b) A person commits an offense if he forges a writing with intent to defraud or harm another.

> (c) *Except as provided by Subsections (d), (e), and (e-1),* an offense under this section is a Class A misdemeanor.

> (d) *Subject to Subsection (e-1),* an offense under this section is a state jail felony if the writing is or purports to be a will, codicil, deed, deed of trust, mortgage, security instrument, security agreement, credit card, check, authorization to debit an account at a financial institution, or similar sight order for payment of money, contract, release, or other commercial instrument.

---

[9] The Legislature amended Section 32.21 during the 2023 legislative session. *See* Act of May 9, 2023, 88th Leg., ch. 132 (H.B. 1910), § 1, eff. Sept. 1, 2023 (adding new subsection (f-1), which provides, "For purposes of Subsection (e-1), it is presumed that a person in possession of money that is forged within the meaning of Subsection (a)(1)(A) intended to obtain a property or service of a value equal to the total purported value of the forged money."). Because the amendment is applicable only to offenses committed on or after September 1, 2023, we do not directly consider it here.

(e) *Subject to Subsection (e-1),* an offense under this section is a felony of the third degree if the writing is or purports to be:

> (1) part of an issue of money, securities, postage or revenue stamps;

> (2) a government record listed in Section 37.01(2)(C); or

> (3) other instruments issued by a state or national government or by a subdivision of either, or part of an issue of stock, bonds, or other instruments representing interests in or claims against another person.

(e-1) *If it is shown on the trial of an offense under this section that the actor engaged in the conduct to obtain or attempt to obtain a property or service, an offense under this section is:*

> (1) a Class C misdemeanor if the value of the property or service is less than $100;

> (2) a Class B misdemeanor if the value of the property or service is $100 or more but less than $750;

> (3) a Class A misdemeanor if the value of the property or service is $750 or more but less than $2,500;

> (4) a state jail felony if the value of the property or service is $2,500 or more but less than $30,000;

> (5) a felony of the third degree if the value of the property or service is $30,000 or more but less than $150,000;

> (6) a felony of the second degree if the value of the property or service is $150,000 or more but less than $300,000; and

> (7) a felony of the first degree if the value of the property or service is $300,000 or more.

(e-2) Notwithstanding any other provision of this section, an offense under this section, other than an offense described for purposes of punishment by Subsection (e-1)(7), is increased to the next higher category of offense if it is shown on the trial of the offense that the offense was committed against an elderly individual as defined by Section 22.04.

(f) A person is presumed to intend to defraud or harm another if the person acts with respect to two or more writings of the same type and if each writing is a government record listed in Section 37.01(2)(C).

(g) If conduct that constitutes an offense under this section also constitutes an offense under any other law, the actor may be prosecuted under this section or the other law.

TEX. PENAL CODE § 32.21 (emphasis added).[10]

We make several initial observations about the statutory language and structure:

- Subsection (b) sets forth the core prohibited conduct that must be alleged and proven in all forgery cases: "A person commits an offense if he forges a writing with intent to defraud or harm another." *Id.* § 32.21(b).

- Subsection (c) provides that the offense is a Class A misdemeanor, "*[e]xcept as provided by Subsections (d), (e), and (e-1)." Id.* § 32.21(c). Thus, the

---

[10] The statute additionally includes the following definitions for "forge" and "writing":

(a) For purposes of this section:

(1) "Forge" means:

(A) to alter, make, complete, execute, or authenticate any writing so that it purports:

(i) to be the act of another who did not authorize that act;

(ii) to have been executed at a time or place or in a numbered sequence other than was in fact the case; or

(iii) to be a copy of an original when no such original existed;

(B) to issue, transfer, register the transfer of, pass, publish, or otherwise utter a writing that is forged within the meaning of Paragraph (A); or

(C) to possess a writing that is forged within the meaning of Paragraph (A) with intent to utter it in a manner specified in Paragraph (B).

(2) "Writing" includes:

(A) printing or any other method of recording information;

(B) money, coins, tokens, stamps, seals, credit cards, badges, and trademarks; and

(C) symbols of value, right, privilege, or identification.

TEX. PENAL CODE § 32.21(a).

default offense classification is a Class A misdemeanor, and subsections (d), (e), and (e-1) are grouped together as exceptions to the default classification.

- Subsections (d) and (e) are based upon a finding that the defendant forged a particular *type* of writing (i.e., "if the writing is or purports to be" one of the enumerated types of writings).

- In contrast, Subsection (e-1) is based upon the defendant's *motive* or *purpose* for committing the forgery (that is, whether he "engaged in the conduct to obtain or attempt to obtain a property or service").

- Notably, subsection (e-1) is worded quite differently from subsections (d) and (e). Specifically, subsection (e-1) begins with the phrase, "*If it is shown on the trial of an offense under this section*," whereas subsections (d) and (e) contain no such language.

- Yet, subsections (d) and (e) both contain a significant prefatory clause that subsection (e-1) does not—each begins with language stipulating that its provisions are "*Subject to Subsection (e-1)*."

- However, subsections (d), (e), and (e-1) do all have at least one thing in common—they all alter the actual offense level by providing that an offense "is" of a particular grade, rather than providing that an offense should be "punished as" or "punishable as" some other grade of offense.

- Whereas subsections (d) and (e) fix the offense level at either a state-jail felony or third-degree felony, respectively, the value ladder in subsection (e-1) contains a wide range of possible offense levels, from a Class C misdemeanor to a first-degree felony, depending on the value of the property or services at issue.

- The value ladder in subsection (e-1) has the unusual feature of being able to either reduce the offense classification to lower than the Class A misdemeanor default, or to raise the offense level all the way to a first-degree felony. Given this feature of the statute, it is apparent that the value ladder may operate as a double-edged sword for criminal defendants—for offenses involving low-dollar-value property or services, the value ladder can significantly reduce the degree of an offense as compared to the state-jail and third-degree felony provisions in subsections (d) and (e); but for offenses involving high-dollar-value property and services, the opposite is true.

With these general observations in mind, we now turn to consider the court of appeals' statutory analysis and the parties' arguments addressing it.

**C. The "Subject to Subsection (e-1)" clause in Subsections (d) and (e) means the value ladder is not discretionary.**

We will first address the State's argument that the value ladder in subsection (e-1) is a tool to be invoked in the prosecution's discretion, rather than a mandatory provision that applies whenever a defendant forges a writing to obtain property or services.

**1. "Subject to" has a plain meaning in this context.**

In support of its analysis of this argument, the court of appeals cited two civil cases interpreting statutory provisions where one provision was "subject to" another. *See Green*, 613 S.W.3d at 577 (citing *R.R. St. & Co. v. Pilgrim Enters.*, 166 S.W.3d 232, 247 (Tex. 2005); *In re Houston Cty. ex rel. Session*, 515 S.W.3d 334, 336 (Tex. App.—Tyler 2015)). In *R.R. St. & Co.*, the Texas Supreme Court considered the phrase "subject to" as it appears in the definition of "solid waste" under the Texas Solid Waste Disposal Act. *See R.R. St. & Co*, 166 S.W.3d at 247 (citing TEX. HEALTH & SAFETY CODE § 361.003(34)) (providing a definition for "solid waste" that was "[s]ubject to the limitations of 42 U.S.C. Section 6903(27) and 40 C.F.R. Section 261.4(a)").[11] The Texas Supreme Court noted that this

---

[11] The complete statutory provision at issue in *R.R. St. & Co*. stated,

> (34) *Subject to the limitations of* 42 U.S.C. Section 6903(27) and 40 C.F.R. Section 261.4(a), 'solid waste' means garbage, rubbish, refuse, sludge from a waste treatment plant, water supply treatment plant, or air pollution control facility, and other discarded material, including solid, liquid, semisolid, or contained gaseous material resulting from industrial, municipal, commercial, mining, and agricultural operations and from community and institutional activities. The term:
>
> > (A) does not include:
> >
> > > (i) solid or dissolved material in domestic sewage . . . ; and . . .

phrasing was "plain" in signaling the Legislature's intent to "limit the definition of solid waste" through the aforementioned federal provisions. *Id.* at 248.

In *In re Houston Cty.*, 515 S.W.3d at 336, the Tyler Court of Appeals considered the introductory phrase, "Subject to the Texas Disciplinary Rules of Professional Conduct" in Texas Family Code Section 81.0075. *See* TEX. FAM. CODE § 81.0075 ("*Subject to the Texas Disciplinary Rules of Professional Conduct*, a prosecuting attorney is not precluded from representing a party in a proceeding under this subtitle and the Department of Family and Protective Services in another action involving the party, regardless of whether the proceeding under this subtitle occurs before, concurrently with, or after the other action involving the party."). The Tyler court reasoned that, "'[u]sed in the ordinary sense, 'subject to' means 'subordinate to,' 'subservient to,' or 'limited by.'" *In re Houston Cty.*, 515 S.W.3d at 341 (quoting *Cockrell v. Texas Gulf Sulphur Co.*, 299 S.W.2d 672, 676 (Tex. 1956)). Thus, the Tyler court held that the introductory "subject to" clause meant that the subsequent provisions addressing permissible representation were limited by, and were subservient to, the Disciplinary Rules. *Id.* ("'[S]ubject to' unambiguously indicates that the specific language relating to the Texas disciplinary rules limits Section 81.0075's general language describing the permitted representation"; "the unambiguous language of the statute reflects the legislature's intent to authorize the representation described in Section 81.0075 unless the Texas Disciplinary Rules of Professional Conduct prohibits it").

---

(B) does include hazardous substances for the purposes of Sections 361.271 through 361.277, 361.280, and 361.343 through 361.345.

TEX. HEALTH & SAFETY CODE § 361.003(34) (emphasis added).

We agree that the ordinary use of "subject to" means subordinate to, subservient to, or limited by. *See In re Houston Cty.*, 515 S.W.3d at 341; *see also Cockrell*, 299 S.W.2d at 676-77 (stating that "a 'subject to' clause is a limiting clause, and a qualifying term"). Or, as other courts have held, the phrase may also logically be understood to mean "not in conflict with." *See State ex rel. White v. Bradley*, 956 S.W.2d 725, 738–39 (Tex. App.—Fort Worth 1997), *rev'd on other grounds*, 990 S.W.3d 245 (Tex. 1999) (citing *City of Portland v. Jackson*, 850 P.2d 1093, 1094 (Or. 1993)). Applying these ordinary meanings in this context, the "[s]ubject to Subsection (e-1)" clause in Section 32.21(d) and (e) means that those provisions are limited by, and are subservient to, the competing offense-classification provisions in subsection (e-1). *See* TEX. PENAL CODE § 32.21(d), (e) ("*Subject to Subsection (e-1)*, an offense under this section is a [state-jail felony or third-degree felony] if the writing is or purports to be" one of the enumerated types) (emphasis added). The result is that, if the facts of a given forgery offense could fall either under the value ladder in subsection (e-1) (because the defendant "engaged in the conduct to obtain or attempt to obtain a property or service"), *or* the type-of-writing provisions in subsections (d) or (e) (based on the type of writing involved), then the offense classifications in subsection (e-1) trump those in subsections (d) or (e), and the offense classification must be based on the value of any property or services at issue. The State has no discretion to avoid this result.

In seeking to refute this conclusion, the State in *Green* points to subsection (g) of Section 32.21, which states that "[i]f conduct that constitutes an offense *under this section* also constitutes an offense under *any other law*, the actor may be prosecuted under this

section or the other law." TEX. PENAL CODE § 32.21(g) (emphasis added). The State contends that the Legislature's decision to retain subsection (g), notwithstanding the addition of subsection (e-1)'s value ladder, signals legislative intent to allow significant prosecutorial discretion in the charging of forgeries—including by allowing prosecutors to bypass the provisions in subsection (e-1)'s value ladder in favor of the felony provisions in subsection (d) or (e). We disagree. While Subsection (g) affords prosecutors discretion to bring charges under any other applicable provision outside Section 32.21, it does not speak to the ability of prosecutors to freely choose amongst the subsections within Section 32.21. And, as we have already explained above, the "subject to" clause in subsections (d) and (e) provides that the offense classifications in subsection (e-1) override those found in subsections (d) and (e) whenever the defendant engages in the forgery to obtain property or services. The State offers no persuasive argument to overcome the statute's plain text in this regard.[12]

---

[12] The State also contends that the court of appeals' interpretation would lead to the bizarre result that the State could charge check forgers more harshly than currency forgers. This argument stems from the fact that the State could, in many cases, theoretically charge check forgers with a felony under Penal Code Section 32.51 for fraudulent use of identifying information but would be limited to charging currency forgers under the misdemeanor provisions in the value ladder. *See* TEX. PENAL CODE §§ 32.51(c) (setting forth felony ranges of punishment for fraudulent use of identifying information); 32.21(e-1)(1)-(3) (setting forth misdemeanor ranges of punishment under the value ladder). Because we have determined that the language in Section 32.21 is plain in refuting the State's position that the value ladder is discretionary, we need not consider this argument. *See, e.g., State v. Neesley*, 239 S.W.3d 780, 783 (Tex. Crim. App. 2007) (stating that we will consider extratextual factors only when the statute's plain language "'would lead to absurd results, or if the language is not plain but rather ambiguous'") (quoting *Boykin v. State*, 818 S.W.2d 782 (Tex. Crim. App. 1991)). But, even were we to consider this argument, we would not find it persuasive. The purpose served by Section 32.51, protecting people from identity theft, is distinct from the purpose served by Section 32.21(e-1), which is to protect the recipient of the forged writing against loss of property or services. Given this fact, it is not illogical or absurd to have different punishments to protect these different interests.

### 2. Legislative history supports holding that the value ladder is mandatory when raised by the facts.

Even assuming *arguendo* that Section 32.21 is ambiguous on this point, the relevant legislative history accompanying enactment of Subsection (e-1)'s value ladder supports the same conclusion. The Bill Analysis for Senate Bill 1824 indicates that the 2017 amendments to Section 32.21 were intended to bring the forgery penalties into conformity with the penalties for other property crimes that use a similar value ladder offense-classification system.[13] Specifically, the legislative history reflects a particular concern that

---

[13] *See* Bill Analysis, Senate Research Center, S.B. 1824, April 21, 2017. The Bill Analysis states,

> Last session, the governor signed H.B. 1396, which updated the property crime thresholds to reflect twenty years of inflation. . . . However, the charge of forgery was unintentionally left out of the threshold adjustment. S.B. 1824 corrects this oversight and updates the threshold ladder for forgery crimes related to fake checks, money orders, and other simple transactions *to match the penalty ladder for the rest of Texas' theft offenses.*

> S.B. 1824 amends Section 32.21, Penal Code, to *bring the offense of forgery in line with the damage amounts for all other property crimes, including the similar crime of theft by check. . . .* Current law designates forgery by check, or "fake checks," to be an automatic state jail felony, along with writings that pretend to be a will, deed, mortgage, or security agreement. Forgery of a will is a far more serious offense than forgery of a check for a small dollar amount. Many forgery charges resulting in a state jail sentence relate to simple check forgery in an amount that would otherwise qualify as misdemeanor under the property threshold structure. Some of these convictions are first-time offenders. Moreover, very similar check-related offenses, trying to cash a hot check or write a bad check for goods and services, were included in the property crime threshold adjustment from last session. S.B. 1824 creates consistency with other check-related offenses and keeps non-violent offenders, many of whom are first time offenders, out of Texas state jails.

*Id. (emphasis added).* We note here that the provisions in Section 32.21(e-1) were originally proposed in Senate Bill 1824. However, the provisions were ultimately added through a floor amendment to another bill, House Bill 351. *See* Acts 2017, 85th Leg., ch. 977 (H.B. 351), § 25, eff. Sept. 1, 2017.

small-dollar forgery offenses were being punished more harshly than other similar property crimes, such as theft by check.[14] While the legislative history reflects a desire to reduce the penalties for small-dollar forgery offenses, nothing about this history implies that the Legislature intended to afford the State discretion to bypass the misdemeanor provisions in the value ladder in favor of pursuing a felony conviction under subsections (d) or (e).

### 3. Conclusion: The provisions in subsection (e-1) are mandatory rather than discretionary.

Accordingly, we uphold this aspect of the court of appeals' analysis in which it concluded that the provisions in subsection (e-1)'s value ladder are not discretionary but are instead mandatory when raised by the facts. Thus, if the facts of the offense show that the defendant engaged in the forgery "to obtain or attempt to obtain a property or service," *see* TEX. PENAL CODE § 32.21(e-1), the offense-classification provisions in subsection (e-1) control over those in subsections (d) and (e) in the event of a conflict.

### D.    Subsection (e-1) is a statutory element, rather than a punishment issue.

We now address the issue presented in *Green* regarding how subsection (e-1) should operate in practice. One aspect of the court of appeals' analysis of this question was a consideration of whether subsection (e-1) was intended to operate as a punishment-phase issue, or whether it instead operates as an element of forgery that must be pled in the indictment and proven beyond a reasonable doubt at the guilt phase. *Green*, 613 S.W.3d at

---

[14] *See, e.g.,* TEX. PENAL CODE § 31.03(e) (value ladder for theft setting forth offense classifications similar to those contained within Section 32.21(e-1), with offense classifications ranging from a Class C misdemeanor for theft of property valued at less than $100 to a first-degree felony for theft of property valued at over $300,000).

590. In resolving this issue, the court of appeals relied on our opinion in *Oliva*, 548 S.W.3d at 528, and concluded that subsection (e-1) constitutes an element of the offense, rather than a punishment provision. *See Green*, 613 S.W.3d at 592.[15] We agree.

### 1. *Oliva v. State*

In *Oliva*, this Court examined whether, under Penal Code Section 49.09, entitled "Enhanced Offenses and Penalties" related to DWI offenses,[16] subsection (a)—the offense elevation for DWI offenses after a single prior DWI conviction—served as an element of an offense or a punishment issue. *See* 548 S.W.3d 518. At the outset of our analysis in *Oliva*, we examined a number of textual factors that are relevant to such a determination, including: (1) whether the statute had any "explicit labeling" designating something as an element or punishment issue; (2) whether the provision included the phrase, "A person commits an offense if," which is the most "obvious and common method of prescribing elements of an offense;" (3) whether the statute increased the actual offense level by providing that an offense "is" of a particular grade or instead merely provided that an offense was punishable under some higher category; (4) whether the provision included

---

[15] Even though this conclusion was reached by the court of appeals in *Green*, it is only in *Lennox* that the State has challenged this aspect of the court of appeals' analysis on discretionary review; the State in *Green* concedes that (e-1) must function as an element. While the State in *Lennox* argues that (e-1) was intended to operate as a punishment issue, it also seems to concede that whenever (e-1) would apply to *aggravate* the defendant's offense level beyond the default offense level, it must function as an element in those cases to comport with due process. However, the State views the applicable "default" for these purposes as being set forth by the third-degree felony provision in subsection (e), rather than the Class A misdemeanor default under subsection (c).

[16] *See* TEX. PEN. CODE § 49.09(a) ("Except as provided by Subsection (b), an offense under Section 49.04, 49.05, 49.06, or 49.065 is a Class A misdemeanor, with a minimum term of confinement of 30 days, if it is shown on the trial of the offense that the person has previously been convicted one time of" one of the enumerated intoxication offenses).

the phrase, "if it is shown on the trial of," which is a prefatory phrase "strongly associated with punishment enhancements;" and (5) whether the provision is jurisdictional, in that an affirmative finding would raise the offense level from a misdemeanor range to a felony range such that jurisdiction in the district court would be proper. *Id*. at 522–29.[17] Finding that these factors, on balance, did not provide any conclusive answer as to whether the provision in Section 49.09(a) should be treated as an element or a punishment issue, we proceeded to consider extra-textual factors. *Id*. at 529–33.

One focus of our analysis was on the distinction between prior-conviction enhancement provisions and provisions involving fact issues that were "part of the circumstances of the offense on trial." *Id.* at 529–30. We noted that the fact of a prior conviction is excluded from the constitutional right to a jury trial under *Apprendi v. New Jersey*. *Id.* at 529 (citing *Apprendi*, 530 U.S. at 490). But, due process requires that other types of fact issues that would raise the maximum punishment for an offense must be submitted to the jury and proven beyond a reasonable doubt. *Id.* at 530. In view of this distinction, we suggested that there was a risk of constitutional error inherent in trying the

---

[17] In another portion of our analysis in *Oliva*, we summarized the holdings of our prior cases addressing similar issues as follows:

> Under our cases, then, the words "punished for," "punishable by," or similar language ordinarily mark an enhancing provision as a punishment issue. The status of an enhancing provision as a prior-conviction provision, on the other hand, is some indication of a punishment issue but is not conclusive. But the inference that a prior-conviction provision is a punishment issue becomes much stronger when it includes "if it is shown on the trial of" language, and that inference is further strengthened if it is also true that the provision is contained in an entirely separate section from the section that more obviously prescribes the elements of the offense.

*Oliva,* 548 S.W.3d at 532.

latter type of issue at the punishment phase, because by that point a defendant has a forfeitable, statutory-only right to a jury determination under Texas law. *Id.* (observing that the forfeitable nature of the statutory right to a jury trial at the punishment phase in non-capital cases "might complicate trying at the punishment stage an issue to which the constitutional right to a jury trial attaches"). Based on this concern, we concluded that, if "the statutory aggravating fact would be part of the circumstances of the offense on trial," rather than a prior-conviction enhancement, "that would be a factor in favor of construing the statutory aggravating fact as an element of the offense." *Id.* (emphasis added).

A second focus of our extra-textual analysis in *Oliva* was on jurisdictional considerations. Citing our prior decision in *Ex parte Benson*, 459 S.W.3d 67 (Tex. Crim. App. 2015), we suggested that, where a provision raises the offense level from a misdemeanor to a felony range, invoking such provision at the pleading stage is necessary to demonstrate that the district court has jurisdiction, and therefore such provisions must be treated as elemental rather than as punishment issues. *Oliva,* 548 S.W.3d at 533 (observing that *Benson* "rejected the notion that there is a special category of 'jurisdictional' elements that are not elements for all purposes"). Thus, even in the context of the prior-conviction enhancements that were at issue in *Benson*, "something that would otherwise be a punishment issue must become an element *because it is jurisdictional.*" *Id.* (emphasis added). Applying these considerations to the provision at issue in *Oliva*, we ultimately concluded that, on balance, the "various factors suggest[ed] that the legislature intended that § 49.09(a) prescribe a punishment issue"—both because it was a prior-conviction provision that did not implicate *Apprendi* considerations, and because the

offense would remain a misdemeanor even if the provision applied and so it was not jurisdictional. *Id.* at 534.

### 2. Application of *Oliva* Considerations to Section 32.21(e-1)

We recognize as an initial matter that Section 32.21(e-1) is quite different from the provision that was at issue in *Oliva*. *Oliva* involved a traditional prior-conviction aggravating provision*,* whereas the value ladder in Section 32.21(e-1) does not solely operate as an aggravating provision; rather, it has the ability to either decrease *or* increase the offense level from the Class A misdemeanor default, depending on the value of the property or services at issue. *See* TEX. PENAL CODE § 32.21(e-1)(1)–(7). This feature of the statute complicates our analysis somewhat, but we nevertheless find that the factors from *Oliva* apply persuasively to show that subsection (e-1) constitutes an element of a distinct forgery-to-obtain-property-or-services offense, rather than a punishment-phase issue.

### a. The statutory text is ambiguous.

Beginning with the statutory text itself, Section 32.21 contains no explicit language indicating whether the Legislature intended for subsection (e-1) to operate as an element or as a punishment issue. Importantly, subsection (e-1) *does* include the phrase, "if it is shown on the trial of an offense," which is a phrase "strongly associated" with punishment issues and "seem[s] inherently to indicate something that is in addition to an element of the offense." *Oliva,* 548 S.W.3d at 527. And yet, in *Oliva* we recognized that the inclusion of this "if it is shown on the trial of" language is not conclusive evidence that something should be treated as a punishment issue. That is because in some instances, we have held

that provisions including this language were elemental for other reasons. *Id.* at 528 (observing that "[i]t is not always true that this phrase . . . causes a statute to prescribe a punishment issue," and citing TEX. PEN. CODE § 49.09(b)(2), and *Benson*, 459 S.W.3d at 75-76).

Several other considerations from *Oliva* weigh in favor of treating (e-1) as an element: (1) subsection (e-1) does not contain the words "punish" or "punishable" but instead provides that an offense "is" a particular grade of felony or misdemeanor; (2) it is not a prior-conviction enhancement provision but instead involves facts surrounding "the circumstances of the offense on trial;" and (3) it is found in the same Penal Code section as the provision defining the core forgery offense, Section 32.21(b), rather than being contained in an entirely separate Penal Code section. *See id.* at 530, 532. Weighing these factors on the whole, we find ambiguity in the statute and will therefore consider extratextual factors.

> **b.** **Based on *Apprendi* and jurisdictional considerations, the aggravating portions of the value ladder must be treated as elements.**

Both the *Apprendi*/due process and jurisdictional considerations discussed in *Oliva* are highly relevant here. First, if we were to treat the provisions in (e-1) as setting forth a punishment issue, the *aggravating* portions of the value ladder (i.e., those that would elevate the offense level above the Class A misdemeanor default), would trigger the requirements of *Apprendi* because the facts at issue—whether the defendant engaged in the conduct to obtain property or services and the value of any property or services at issue— are facts that increase the maximum potential punishment for forgery. *See* TEX. PENAL

CODE § 32.21(c) (providing that base-level forgery offense is Class A misdemeanor, *except* as provided by subsections (d), (e), and (e-1)); (e-1)(4)–(7) (setting forth felony offense classifications under the value ladder ranging from state-jail felony to first-degree felony); *see also Apprendi*, 530 U.S. at 490 (holding that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."). This factor weighs heavily in favor of treating at least the aggravating portions of the value ladder as elements to protect against possible violations of the defendant's constitutional right to a jury determination of these facts. *See Oliva*, 548 S.W.3d at 529–30.

And yet, of even greater importance to our analysis is the fact that the aggravating portions of the value ladder can elevate forgery from a misdemeanor to a felony offense. *See* TEX. PENAL CODE § 32.21(e-1)(4)–(7) (value-ladder provisions setting forth state-jail through first-degree felony offense classifications for any forgery involving property or services valued at more than $2,500). Thus, the State could invoke these aggravating portions of the value ladder at the pleading stage to demonstrate that the offense is a felony over which the district court has jurisdiction. Under those circumstances, such an allegation under (e-1) would constitute a jurisdictional element, which, as we indicated in *Oliva*, must be treated as an element for all purposes. *Oliva*, 548 S.W.3d at 533; *see also Holoman v. State,* 620 S.W.3d 141, 145–46 (Tex. Crim. App. 2021) (explaining that when an aggravating fact "raises the offense level from a misdemeanor *to a felony,* thus conferring subject-matter jurisdiction upon a different court," such a "jurisdictional aggravating fact will always be considered elemental, not punishment-only"). Given these considerations,

we conclude that *at least* the felony provisions in the value ladder (i.e., Section 32.21(e-1)(4)–(7)) must be treated as elemental rather than as punishment issues.

> ### c. Additional considerations signal that the misdemeanor provisions in the value ladder must also be treated as elements.

But what of the remaining portions of the value ladder that do not aggravate but instead can actually *reduce* the offense level to below the Class A misdemeanor default? *See* TEX. PENAL CODE § 32.21(e-1)(1)–(3) (providing for Class A, B, and C misdemeanor offense classifications for forgery offenses involving attempts to obtain goods or services valued at less than $2,500). In those instances, neither *Apprendi* nor jurisdictional considerations would be implicated. The question then becomes whether, despite treating the aggravating portions of the value ladder as elements, *see id*. § 32.21(e-1)(4)–(7), we should nevertheless treat the misdemeanor provisions within the value ladder as mere punishment provisions.

We decline to adopt such an awkward construction of Section 32.21(e-1) that would in effect "split" the value ladder in two, with the felony provisions constituting jurisdictional elements and the misdemeanor provisions constituting punishment issues. There is nothing to suggest that the Legislature would have intended such a cumbersome result. In reaching this conclusion, we rely on *Holoman*, 620 S.W.3d at 145–47.

> ### i. *Holoman v. State*

In *Holoman*, when faced with a similar question about the prior-conviction aggravating provision for family-violence assault found in Penal Code Section 22.01(b)(2)(A), we declined to adopt the State's proposed construction that would have

allowed that provision to operate "*either* elementally, *or* as a punishment provision only, depending on the vicissitudes of the particular case." *Id.* at 147.[18] Instead, we held that the provision must consistently operate only as an element. *Id.* The State had conceded that Section 22.01(b)(2)(A) could sometimes operate as a jurisdictional element that must be pled in the indictment and proven at the guilt phase—but if it was not invoked for that purpose in a particular case, then under those circumstances the State argued that it could instead operate as a punishment issue. *Id.* at 144.[19] We declared the State's construction to be "odd and unwieldy," such that it was unlikely the Legislature would have intended it. *Id.* at 147. In reaching our decision, we cited *Oliva* and observed that the neighboring provision in Section 22.01(b)(2)(B), which raises assault on a family member to a third-

---

[18] *See* TEX. PENAL CODE § 22.01(b)(2)(A) (providing that misdemeanor assault is elevated to a third-degree felony "*if it is shown on the trial of the offense* that the defendant has been previously convicted of" one of the enumerated family-violence offenses) (emphasis added). Though our analysis in *Holoman* did not place much emphasis on the "if it is shown on the trial of" language in Section 22.02(b)(2)(A), the fact that we ultimately determined that provision to be elemental *in spite* of the inclusion of that phrase provides additional support for our holding here today.

[19] The State had charged Holoman with misdemeanor assault, elevated to a third-degree felony under Penal Code Section 22.01(b)(2)(B). *Holoman*, 620 S.W.3d at 142; *see* TEX. PENAL CODE § 22.01(b)(2)(B) (providing that assault on a family member is elevated to a third-degree felony if "the offense is committed by intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood of the person by applying pressure to the person's throat or neck or by blocking the person's nose or mouth[.]"). But, the jury declined to find that aggravating fact at the guilt phase and instead convicted Holoman of the lesser offense of misdemeanor assault. *Holoman*, 620 S.W.3d at 143. At the punishment phase, however, the State sought to enhance Holoman's offense to a third-degree felony by alleging that he had a prior family-violence assault conviction under the neighboring provision in Section 22.01(b)(2)(A). *See* TEX. PENAL CODE § 22.01(b)(2)(A) (providing that assault on a family member is a third-degree felony if "it is shown on the trial of the offense that the defendant has been previously convicted of" one of the enumerated family-violence offenses). Thus, the precise question presented was whether the State could rely upon the prior-conviction provision in subsection (b)(2)(A) at the punishment phase to elevate Holoman's offense to a third-degree felony after the jury had already rejected the other aggravating facts alleged under (b)(2)(B) during the guilt phase.

degree felony if the defendant committed the offense by impeding the victim's breathing or blood circulation, was almost certainly "categorically elemental" because it was part of the circumstances of the offense on trial. *Id.* (citing *Oliva*, 548 S.W.3d at 530). We declined to adopt the State's "lopsided" construction of the statute, wherein one of the aggravating provisions in Section 22.01(b)(2) would be elemental in all instances while the other could sometimes be elemental and sometimes operate as a punishment issue. *Id.* We concluded that Section 22.01(b)(2)(A) was "an element of an aggravated crime and not, alternatively, a punishment enhancement." *Id.*

Although *Holoman* is distinguishable from this case in some key respects, the broad principles underlying that decision nevertheless apply here. Just as we rejected the State's proposed construction in *Holoman* as "odd and unwieldy," we believe it would be similarly awkward here, and therefore likely contrary to the Legislature's intended construction, to hold that the value ladder in Section 32.21(e-1) sometimes operates as an element and sometimes operates as a punishment issue, depending on the value of the property or services involved in the forgery offense. *See* TEX. PENAL CODE § 32.21(e-1)(1)–(7).

### ii. Consequences of the State's proposed construction

We also take into consideration the consequences of the State's proposed construction. Were we to treat the misdemeanor portions of subsection (e-1) as punishment provisions, the practical effect would be to undermine one of the value ladder's apparent purposes of reducing the penalties for forgery offenses committed to obtain low-dollar-value goods or services. See n. 13, *supra* (referencing Bill Analysis stating that the value

ladder was enacted, in part, to reduce the penalties for low-dollar-value forgery offenses and to keep such offenders "out of state jail"). This is because, under that construction, the State could routinely charge such offenses under the felony type-of-writing provisions in subsections (d) and (e), only for those offenses to eventually be reduced to misdemeanors at the punishment phase through application of the value ladder. But by then, in many instances, such defendants would have already spent a significant amount of time in pretrial custody—likely exceeding the maximum permissible punishment for misdemeanor forgery.[20] The court of appeals emphasized this consideration in its analysis of these issues, highlighting the example of Green's case, wherein he spent five months incarcerated before the trial court granted his motion to quash. *See Green*, 613 S.W.3d at 587–89. We agree with the court of appeals that it is highly unlikely the Legislature would have intended for offenders who commit forgery to obtain low-dollar-value goods or services to be initially charged with felonies, only to have their offenses reduced to misdemeanors at the punishment phase (and even then, only if they raise an issue under Subsection (e-1) as a defensive matter).

### 3. Conclusion: Subsection (e-1)'s value ladder must operate as an element rather than as a punishment issue.

In sum, we think it improbable that the Legislature would have intended for subsection (e-1) to sometimes operate as a jurisdictional element (i.e., whenever it aggravates a forgery offense above the Class A misdemeanor default level into the felony

---

[20] *See* TEX. PENAL CODE §§ 12.21–12.23 (setting forth misdemeanor punishments ranging from a maximum $500 fine only for Class C misdemeanors, up to confinement for a year and a maximum $4,000 fine for a Class A misdemeanor).

range), and sometimes operate as a defensive punishment issue (i.e., whenever it serves to reduce the defendant's offense level). We decline to adopt such an awkward interpretation of the statute that is unsupported by the statutory text, legislative history, or practical considerations. Accordingly, we reject the State's position in *Lennox* that subsection (e-1) was intended to operate as a punishment issue. We instead conclude that subsection (e-1) constitutes an element of a distinct forgery-to-obtain-property-or-services offense that may result in either an aggravated or reduced offense level as compared to the Class A misdemeanor default.

### E. The court of appeals erred in its application of *Apprendi* principles.

In spite of our broad agreement with the court of appeals' analysis up to this point, we part ways with the lower court in its understanding of how due process principles under *Apprendi* affect the practical operation of Section 32.21. In particular, the court of appeals held that after the addition of subsection (e-1) to the statute, due process principles would require the State to plead and prove a new non-statutory element in all forgery cases brought under subsections (d) or (e)—that is, the defendant's "purpose" for committing the forgery—because the defendant's non-property-related purpose was the "enhancing element" that would permit prosecution under the aggravated provisions in subsections (d) and (e). *See Green*, 613 S.W.3d at 596. We conclude that the court of appeals erred in its application of *Apprendi* principles to this situation, and we therefore reject its adoption of a non-statutory "purpose" element that was based on that analysis.

In *Apprendi*, the Supreme Court examined a New Jersey "hate crime" statute that authorized the trial judge, at the punishment phase, to impose an increased range of punishment for an offense if the judge determined by a preponderance of the evidence that the defendant committed the offense with the intent to intimidate a person or group of persons because of their race, color, gender, handicap, religion, sexual orientation, or ethnicity. *Apprendi*, 530 U.S. at 468. The New Jersey courts had upheld the statute, reasoning that such a practice was permissible because the statute set forth a mere "sentencing factor," rather than an element of a criminal offense. *Id.* at 471. The Supreme Court rejected this reasoning and held that the statute violated due process. *Id.* at 490. In doing so, it set forth the seminal rule that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for *a crime* beyond the *prescribed statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt"—and this is true regardless of whether such "fact" is labeled as an element or sentencing factor. *Id.* at 490 (emphasis added). The problem with the hate crime statute, therefore, was that it "'remove[d] from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed'" by labeling those facts as mere sentencing factors that the judge could decide and apply at the punishment phase. *Id.* (quoting *Jones v. United States*, 526 U.S. 227, 252-53 (1999) (Stevens, J., concurring)).

The focus of the *Apprendi* rule is on ensuring that a criminal defendant receives a jury determination on any fact that can increase his range of punishment for a specific crime. Applying that rule requires us to define the pertinent "crime," the "prescribed

statutory maximum" sentence for that crime, and the fact that would "increase[ ] the penalty" for that crime beyond the statutory maximum. *Id.*

In the context of the forgery statute, our understanding of the structure of Section 32.21 is that it effectively sets forth four distinct forgery "crimes," each with a different statutory maximum punishment: (1) the base-level Class A misdemeanor offense under subsection (b) (a defendant commits an offense if he "forges a writing with intent to defraud or harm another"); (2 & 3) the state-jail and third-degree felony provisions in subsections (d) and (e), each of which requires proof of the base-level offense in subsection (b) *plus* the additional fact that the defendant forged a particular *type* of writing; and, finally, (4) the forgery-to-obtain-property-or-services offense in subsection (e-1), which requires proof of the base-level offense *plus* facts showing that the defendant "engaged in the conduct to obtain or attempt to obtain a property or service" and the value of the property or services at issue, which determines the offense level. TEX. PENAL CODE § 32.21(b), (d), (e), (e-1). Based on the statutory structure, the State could prosecute a forgery under any of these discrete subsections by alleging and proving the statutory elements necessary to prove each offense. An *Apprendi* problem would arise only if the State later sought to introduce some additional "fact" (other than the fact of a prior conviction), to be decided by the trial judge, that would result in a sentence in excess of the statutory maximum punishment prescribed by the particular subsection under which the defendant was charged and convicted. *See, e.g., United States v. Thomas*, 274 F.3d 655, 664 (2d Cir. 2001) ("The constitutional rule of *Apprendi* does not apply where the sentence imposed is not greater than the prescribed statutory maximum for the offense of conviction.").

From the foregoing discussion, the flaws in the court of appeals' application of *Apprendi* principles to this situation become readily apparent. The court viewed Section 32.21 as setting forth one single forgery "crime" for which the base-level range of punishment could be as low as a Class C misdemeanor under subsection (e-1). It then further reasoned that the felony type-of-writing provisions in subsections (d) and (e) functioned as "enhancing elements" to this base-level offense. This reasoning was erroneous because Section 32.21 contains not one but four distinct forgery offenses, each with a different applicable range of punishment for *Apprendi* purposes. Accordingly, subsections (d) and (e) do not function as "enhancing elements" to an offense under subsection (e-1)—they are entirely separate offenses. *See, e.g., Juarez v. State*, 198 S.W.3d 790, 794 (Tex. Crim. App. 2006) (rejecting *Apprendi* complaint raised under former Code of Criminal Procedure Article 62.10(b)(3) because the provisions at issue "describe[d] separate offenses and are not enhancement provisions").

Based on this mistaken understanding of the structure of Section 32.21 and the requirements of *Apprendi*, the court of appeals read a non-statutory "purpose" element into subsections (d) and (e)—purportedly to satisfy the due process requirement that the State allege and prove the "enhancing element" that would permit an increased punishment under subsections (d) or (e). *See Green*, 613 S.W.3d at 596.[21]  But, even setting aside the

---

[21] On this point the court of appeals stated: "[T]he defendant's purpose in forging the writing [for some reason *other than* to obtain property or services] is the 'core criminal offense 'element'' that elevates the offense classification in a prosecution under subsection (d) or (e). Therefore, under *Apprendi*, the State must prove this enhancing element beyond a reasonable doubt, and . . . must allege this enhancing element in the indictment." 613 S.W.3d at 596 (citations omitted).

other problems with the court's reasoning, we are unaware of any authority that would support applying *Apprendi* in this manner to impose an additional *non-statutory* requirement for an "enhancing" element. Indeed, such an approach appears to be entirely novel. Thus, for the foregoing reasons, we conclude that the court of appeals erred in its application of *Apprendi* principles to Section 32.21. Accordingly, we reject the court's holding requiring the State to allege and prove a non-statutory "purpose" element for felony forgery cases brought under Section 32.21(d) and (e). We agree with the State's position that subsections (d) and (e) remain complete and valid offenses that the State may rely upon in prosecuting a forgery, even after the addition of subsection (e-1), without the need to read any additional non-statutory requirements into those provisions.

## III. Summary and Conclusion – Harmonizing the Competing Offense-Classification Provisions in Section 32.21

To summarize our understanding of how Section 32.21 should operate in light of the Legislature's 2017 amendments, we set forth the following three conclusions:

First, by adding subsection (e-1) to Section 32.21, and by making the felony type-of-writing provisions in subsections (d) and (e) "[s]ubject to Subsection (e-1)," the Legislature plainly signaled its intent that, whenever the triggering terms in subsection (e-1) are satisfied (i.e., the defendant engaged in the forgery "to obtain or attempt to obtain a property or service"), the offense classifications in subsection (e-1) must control over those in subsections (d) and (e) in the event of a conflict. We understand this statutory structure to effectively operate as a codification of the *in pari materia* doctrine. *See, e.g.*, *Azeez v. State*, 248 S.W.3d 182, 192 (Tex. Crim. App. 2008) (observing that "a defendant has a due

process right to be prosecuted under a 'special' statute that is *in pari materia* with a broader statute when these statutes irreconcilably conflict"); *see also Diruzzo v. State*, 581 S.W.3d 788 (Tex. Crim. App. 2019) (holding that the trial court erred by denying defendant's pretrial motion to quash where the indictment showed, on its face, that he was being prosecuted under the incorrect statutory provision). As a practical matter, this means that if the State charges a forgery offense under subsections (d) or (e) of Section 32.21, but the facts show that the defendant's offense also falls under the value ladder in subsection (e-1) and (e-1) would result in a reduced offense classification, then the defendant is entitled to be convicted and punished under subsection (e-1). Under those circumstances, he may raise a claim that he is being prosecuted under the wrong statutory subsection as a basis for having his offense reduced under the value ladder. We expressly do not decide at this juncture whether, and under what circumstances, a defendant may raise such a claim pretrial based on the facts alleged in the indictment, as opposed to only being able to raise such a claim after the facts have been adduced at trial. We similarly do not decide at this time what preservation requirements would apply to such a claim that the defendant is being prosecuted under the wrong statutory subsection. The parties did not fully brief these issues on discretionary review, and we believe these issues are better addressed in the course of resolving the merits of these cases. Accordingly, we leave it to the court of appeals to address these issues in the first instance on remand, to the extent doing so is necessary to resolve the remaining issues before it.

Second, we have determined that Section 32.21(e-1) was intended to operate as a statutory element, rather than as a punishment issue. As we have indicated above, this

means that Section 32.21 contains four separate forgery offenses: the base-level Class A misdemeanor offense under subsection (b); the state-jail and third-degree felony type-of-writing offenses in subsections (d) and (e); and the forgery-to-obtain-property-or-services offense under subsection (e-1). *See* TEX. PENAL CODE § 32.21(b), (d), (e), (e-1). Each of these subsections sets forth a facially valid forgery offense that the State may rely upon in charging a forgery by tracking the statutory elements. Given our analysis of the "subject to" clause in subsections (d) and (e), if the State has information in its possession indicating that a defendant committed forgery to obtain property or services, it would be the better practice for the State to charge the offense under subsection (e-1). If the State believes such facts are not present and it opts to charge a forgery under subsections (d) or (e), then in that situation, as we have indicated above, if the defendant believes he is being prosecuted under the wrong subsection and is instead entitled to be prosecuted under the value ladder, he may raise such a claim in the trial court and/or on appeal, subject to any applicable preservation requirements.

Finally, we have rejected the court of appeals' conclusion that *Apprendi*/due process principles require the State to plead and prove the non-statutory element of a defendant's "purpose" in a forgery prosecution under Section 32.21(d) or (e). Contrary to the court of appeals' reasoning, *Apprendi* simply does not apply to Section 32.21 to require that result. Nor does the "subject to" language in subsections (d) and (e) itself require the State to negate the applicability of subsection (e-1) in a prosecution under those subsections. Although the language making subsections (d) and (e) "[s]ubject to Subsection (e-1)" effectively restricts the scope of those subsections, we have in other contexts explained that

this type of limiting language in a statute generally does not give rise to an obligation on the State's part to negate the limitation, unless it is expressly labeled as an "exception." *See* TEX. PENAL CODE § 2.02(a) ("An exception to an offense in this code is so labeled by the phrase: 'It is an exception to the application of . . . .'"); *Baumgart v. State*, 512 S.W.3d 335, 344 (Tex. Crim. App. 2017) (discussing Section 2.02(a) and stating, "the legislature has decreed that an exception exists only when [the] exact phrase [in Section 2.02(a)] is used;" "If a defensive matter is not plainly labeled as an exception, defense, or an affirmative defense, then it is a defense. . . . and defenses do not have to be negated in the charging instrument."). Because the Legislature did not use the precise statutory language giving rise to an "exception," the "[s]ubject to" clause in subsections (d) and (e) does not require the State to negate applicability of subsection (e-1). *See Baumgart,* 512 S.W.3d at 344.

Pursuant to the foregoing conclusions, because the court of appeals' holdings were based on its erroneous understanding of the structure of Section 32.21 and due process requirements under *Apprendi*, we vacate the court of appeals' judgments and remand these causes for further proceedings consistent with this opinion.

DELIVERED: January 17, 2024

PUBLISH